## WILLIAM HILLIARD *vs.* JOSEPH RICHARDSON.

The owner of land, who employs a carpenter, for a specific price, to alter and repair a building thereon, and to furnish all the materials for this purpose, is not liable for damages resulting to a third person from boards, deposited in the highway in front of the land by a teamster in the employ of the carpenter, and intended to be used in such alteration and repair.

ACTION OF TORT to recover damages for an injury sustained by the plaintiff while driving upon a highway in the City of Cambridge. Trial before *Merrick,* J., who reported the case, after a verdict for the plaintiff, for the consideration of the full court.

The evidence tended to prove the following facts: Between the hours of five and six in the afternoon of December 5th 1851 the plaintiff was driving in a wagon in and through said highway, when the horse suddenly took fright at a pile of boards lying by the side of the way, but within its limits, bolted from his course, and carried the wheel of the wagon violently against a post near the edge of the sidewalk, whereby the plaintiff was thrown violently from the wagon, and seriously injured. The boards were placed there the same afternoon, and not long before the occurrence of the accident, by a teamster, acting under the direction of Lewis Shaw, with the intention of allowing them to remain till the morning of the next day, and then removing them to the land adjoining the highway. This land, and the buildings upon it, belonged to the defendant, and were in his possession, except so far as they were occupied by Shaw in the execution of a written contract with the defendant, and under license from him. By that contract, Shaw agreed, for a specific price, and before a day named, to alter a certain paper factory into two dwelling-houses, according to a plan and specifications annexed to the contract, and to make certain repairs thereon, and to furnish all the requisite materials. The defendant also gave Shaw license to use, while he should be engaged in the execution of the contract, one of the buildings upon the land to shape and finish work for buildings of his own, in which the

defendant had no interest. Shaw procured the boards and brought them to the place, chiefly for the purpose of using them in the alteration of the defendant's buildings, under the written contract, and was, at the time of the accident, actually engaged in the execution of that contract.

The presiding judge instructed the jury, among other things, that "the act of laying and leaving the boards in the highway by Shaw must, for the purposes of this action, be deemed the act of the defendant;" and that, "as the boards at which it was alleged that the horse took fright, were procured by Shaw, to be used, in whole or in part, in performance and execution of the written contract between him and the defendant, and were materials necessary therefor, the defendant was responsible for the acts of Shaw, in placing the boards in the highway, and suffering them to remain there; and that his liability in relation thereto was in all respects the same as the liability of Shaw."

*C. G. Loring,* for the defendant.

*R. Choate & J. W. May,* for the plaintiff.

The decision was made at March term 1856.

THOMAS, J. The questions raised by the report are upon the instructions given by the presiding judge to the jury. The material question, that upon which the case hinges, is whether, upon the facts reported, the defendant is liable for the acts and for the negligence and carelessness of Shaw.

In looking upon the case reported, it is to be observed, 1st. That the acts done by Shaw, and which are charged as negligence, were not done by any specific direction, or order, or request of the defendant. 2dly. That between the defendant and Shaw the ordinary relation of master and servant did not exist. 3rdly. That the acts done, and which are charged as negligence, were not done upon the land of the defendant. They did not consist in the creating or suffering of a nuisance upon his own land, to the injury of another. 4thly. That the boards placed in the highway were not the property of the defendant; that he had no interest in them, and could exercise no control over them. 5thly. That the defendant did not assume to exercise any control over them. 6thly. That there is no evidence of any purpose

on the part of the defendant to injure the plaintiff, or any body else, or so to use his property, or suffer it to be so used, as to oc casion an injury.

Was the defendant liable for the negligent acts of Shaw in the use of the highway ? As a matter of reason and justice, if the question were a new one, it would be difficult to see on what solid ground the claim of the plaintiff could rest. But he says that such is the settled law of this commonwealth, and that the question is now no longer open for discussion. Three cases are especially relied upon by the plaintiff, as settling the rule in Massachusetts. They are *Stone* v. *Codman*, 15 Pick. 297 ; *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24 ; and *Earle* v. *Hall*, 2 Met. 353.

*Stone* v. *Codman* was this : The defendant employed one Lincoln, a mason, to dig and lay a drain from the defendant's stores, in the city of Boston, to the common sewer. By reason of the opening made by Lincoln and the laborers in his employ- ment, water was let into the plaintiff's cellar, and his goods were wet. 1. Lincoln procured the materials and hired the laborers, charging a compensation for his services and disburse- ments. 2. The acts causing the injury to the plaintiff's goods were done upon the defendant's land, and in the use of it for the defendant's benefit. 3. There was no contract, written or oral, by which the work was to be done for a specific price, or as a job. 4. The case is expressly put upon the ground that between the defendant and Lincoln the relation of master and servant existed. The chief justice, in delivering the opinion of the court, said : " Without reviewing the authorities, and taking the general rule of law to be well settled, that a master or principal is responsible to third persons for the negligence of a servant, by which damage has been done, we are of opinion, that, if Lincoln was employed by the defendant to make and lay a drain for him, on his own land, and extending thence to the public drain, he (Lincoln) procuring the necessary materials, employing laborers, and charging a compensation for his own services and his dis- bursements, he must be deemed, in a legal sense, to have been in the service of the defendant, to the effect of rendering his

employer responsible for want of skill, or want of due diligence and care; so that, if the plaintiff sustained damage by reason of such negligence, the defendant was responsible for such damage." The case well stands on the relation of master and servant. The work was under the control of the defendant. He could change, suspend or terminate it, at his pleasure. Lincoln was upon the land with only an implied license, which the defendant could at any moment revoke. The work was done by Lincoln, not on his own account, but on the defendant's. The defendant was indeed acting throughout by his servants. The injury was done by the escape of water from land of the defendant to that of the plaintiff, which the defendant could have and was bound to have prevented.

The second case relied upon by the plaintiff is that of *Lowell* v. *Boston & Lowell Railroad,* 23 Pick. 24. In a previous suit, (*Currier* v. *Lowell,* 16 Pick. 170,) the town of Lowell had been compelled to pay damages sustained by Currier by reason of a defect in one of the highways of the town. That defect was caused in the construction of the railroad of the Boston & Lowell Company. It consisted in a deep cut through the highway, made in the construction of the railroad. Barriers had been placed across the highway, to prevent travellers from falling into the chasm. It became, in the construction of the railroad, necessary to remove the barriers, for the purpose of carrying out stone and rubbish from the deep cut. They were removed by persons in the employ of the corporation, who neglected to replace them. Currier and another person, driving along the highway in the night time, were precipitated into the deep cut, and seriously injured. Currier brought his action against the town of Lowell, and recovered damages. This action was to recover of the railroad corporation the amount the town had been so compelled to pay. The railroad corporation denied their responsibility for the negligence of the persons employed in the construction of that part of the railroad where the accident took place, because that section of the road had been let out to one Noonan, who had contracted to make the same for a stipulated sum, and had employed the workmen. This defence was not

sustained; nor should it have been.    The defendants had been authorized by their charter to construct a railroad from Boston to Lowell, four rods wide through the whole length.    They were authorized to cross turnpikes or other highways, with power to raise or lower such turnpikes or highways, so that the railroad, if necessary, might pass conveniently over or under the same. *St.* 1830, *c.* 4, §§ 1, 11.    Now it is plain that it is the corporation that are intrusted by the legislature with the execution of these public works, and that they are bound, in the construction of them, to protect the public against danger.    It is equally plain that they cannot escape this responsibility by a delegation of this power to others.    The work was done on land appropriated to the purpose of the railroad, and under authority of the corporation, vested in them by law for the purpose.    The barriers, the omission to replace which was the occasion of the accident, were put up and maintained by a servant of the corporation, and by their express orders; and that servant had the care and supervision of them.    The accident occurred from the negligence of a servant of the railroad corporation, acting under their express orders. The case, then, of *Lowell* v. *Boston & Lowell Railroad* stands perfectly well upon its own principles, and is clearly distinguishable from the case at bar.    The court might well say, that the fact of Noonan being a contractor for this section did not relieve the corporation from the duties or responsibility imposed on them by their charter and the law, especially as the failure to replace the barriers was the act of their immediate servant, acting under their orders.

The only respect, it seems to us, in which this case aids the doctrine of the plaintiff, is that the learned judge who delivered the opinion of the court cites with approbation the case of *Bush* v. *Steinman*, 1 Bos. & Pul. 404, as "fully supported by the authorities and by well established principles."    It is sufficient to remark, in passing, that the decision of the case before the court did not involve the correctness of the rule in *Bush* v. *Steinman*.

The case of *Earle* v. *Hall*, 2 Met. 353, is the third case cited by the plaintiff, as affirming the doctrine upon which he relies.

Hall agreed to sell land to one Gilbert. Gilbert agreed to build a house upon and pay for the land. While the agreement was in force, Gilbert, in preparing to build the house on his own account, by workmen employed by him alone, undermined the wall of the adjoining house of the plaintiff. It was held that Hall was not answerable for the injury, although the title to the land was in him at the time the injury was committed. The general doctrine is stated to be, that we are not merely to inquire who is the general owner of the estate, in ascertaining who is responsible for acts done upon it injurious to another; but who has the efficient control, for whose account, at whose expense, under whose orders is the business carried on, the conduct of which has occasioned the injury. The case of *Bush* v. *Steinman* is cited as a leading case, " very peculiar, and much discussed "; but we do not perceive that the point it decides is affirmed. The general scope of the reasoning in *Earle* v. *Hall*, as well as the express point decided, are adverse to it.

These cases, neither in the points decided, nor the principles which they involve, support the rule contended for by the plaintiff.

But the plaintiff says that the well known case of *Bush* v. *Steinman* is directly in point, and that that case is still the settled law of Westminster Hall. If so, as authority, it would not conclude us; though, as evidence of the law, it would be entitled to high consideration.

Upon this case of *Bush* v. *Steinman* three questions arise: 1. What does it decide? 2. Does it stand well upon authority or reason? 3. Has its authority been overthrown or substantially shaken and impaired by subsequent decisions?

1. The case was this: A, having a house by the roadside, contracted with B to repair it for a stipulated sum; B contracted with C to do the work; C with D to furnish the materials; the servant of D brought a quantity of lime to the house, and placed it in the road, by which the plaintiff's carriage was overturned. *Held*, that A was answerable for the damage sustained.

2. At the trial, Chief Justice Eyre was of opinion that the defendant was not answerable for the injury. In giving his opinion

at the hearing in banc, he says he found great difficulty in stating with accuracy the grounds on which the action was to be supported; the relation of master and servant was not sufficient; the general proposition, that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do, seemed to be too large and loose. He relied, as authorities, upon three cases only : *Stone* v. *Cartwright*, 6 T. R. 411 ; *Littledale* v. *Lonsdale*, 2 H. Bl. 267 ; and a case stated upon the recollection of Mr. Justice Buller.

*Stone* v. *Cartwright* lays no foundation for the rule in *Bush* v. *Steinman*. The decision was but negative in its character. It was, that no action would lie against a steward, manager or agent, for the damage of those employed by him in the service of his principal. This is the entire point decided. Lord Kenyon said :. " I have ever understood that the action must be brought against the hand committing the injury, or against the owner for whom the act was done." The injury complained of was done upon the land of the defendant, and by his servants. It consisted in so negligently working the defendant's mine as to undermine the plaintiff's ground and buildings above it, so that the surface gave way. The mine was in the possession and occupation of the defendant; the injury was direct and immediate ; the workmen were the servants of the owner.

The case of *Littledale* v. *Lonsdale*, in its main facts, cannot be distinguished from *Stone* v. *Cartwright*. It stands upon the same grounds. The defendant's steward employed the underworkmen. They were paid out of the defendant's funds. The machinery and utensils belonged to the defendant, and all the persons employed were his immediate servants.

The third case was but this : A master having employed his servant to do some act, this servant, out of idleness, employed another to do it ; and that person, in carrying into execution the orders which had been given to the servant, committed an injury to the plaintiff, for which the master was held liable. What was the nature of the acts done does not appear. And whether the case was rightly decided or not, it is difficult to see any

analogy between it and the case the lord chief justice was considering.

Mr. Justice Heath referred to the action for defamation, brought against Tattersall, who was the proprietor of a newspaper with sixteen others. The libel was inserted by the persons whom the proprietors had employed by contract to collect the news and compose the paper, yet the defendant was held liable. It would seem to be not very material who composed the paper, but who owned and published it.

Mr. Justice Heath also cited, as in point, the case of *Rosewell* v. *Prior*, 2 Salk. 460, which was an action upon the case for obstructing ancient lights. The defendant had erected upon his land the obstruction complained of. There had been a former recovery for the erection; this suit was for the continuance. The premises of the defendant had been leased. The question was, whether the action would lie for the continuance after his lease. " *Et per cur.* It lies; for he transferred it with the original wrong, and his demise affirms the continuance of it; he hath also rent as a consideration for the continuance, and therefore ought to answer the damage it occasions."

Mr. Justice Rooke, in addition to the cases of *Stone* v. *Cartwright*, and *Littledale* v. *Lonsdale*, alluded also to the case of *Michael* v. *Alestree*, 2 Lev. 172, in which it was held that an action might be maintained against a master for damage done by his servant to the plaintiff in exercising his horses in an improper place, though he was absent, because it should be intended that the master sent the servant to exercise the horses there. See *Parsons* v. *Winchell*, 5 Cush. 595.

The examination of these cases justifies the remark that *Bush* v. *Steinman* does not stand well upon the authorities, and is not a recognition of principles before that time settled. The rule it adopts is apparently for the first time announced.

Does it stand well upon the reasoning of the court? We think all the opinions given in it lose sight of these two important distinctions: In the cases cited and relied upon, the acts done, which were the subjects of complaint, were either acts done by servants or agents, under the efficient control of the

defendants, or were nuisances created upon the premises of the defendants, to the direct injury of the estate of the plaintiffs. The servant of the limeburner was not the servant of the defendant; over him the defendant had no control whatsoever; to the defendant he was not responsible. There was no nuisance created on the defendant's land. It does not appear that the defendant owned the fee of the highway. The case is put on the ground that the lime was put near the premises of the defendant, and with a view of being carried upon them. The lime was not on the defendant's land; he did not direct it to be put there; he had not the control of the man who put it there.

Mr. Justice Heath said: " I found my opinion on this single point, viz., that all the subcontracting parties were in the employ of the defendant." This is not so, unless it be true that a man who contracts with a mason to build a house employs the servant of the man who burns the lime.

Mr. Justice Rooke said: " The person, from whom the whole authority is originally derived, is the person who ought to be answerable, and great inconvenience would follow if it were otherwise." It cannot be meant that one who builds a house is to be responsible for the negligence of every man and his servants who undertakes to furnish materials for the same. Such a rule would render him liable for the most remote and inconsequential damages. But the act complained of did not result from the authority of the defendant. The authority under which the servant of the limeburner acted was that of his master. And neither the limeburner nor his servant was acting under the authority of the defendant, or subject to his control. The defendant might, with the same reason, have been held liable for the carelessness of the servant who burnt the lime, and of the servant of the man who furnished the coals to burn the lime.

3. Has the doctrine of the case of *Bush* v. *Steinman* been affirmed in England, or has it been overruled and its authority impaired ?

The plaintiff cites the case of *Sly* v. *Edgely*, at *nisi prius*, 6 Esp. R. 6. The defendant, with others, then owning several

houses, the kitchens of which were subject to be overflowed, employed a bricklayer to sink a large sewer in the street. The bricklayer opened the sewer and left it .open, and the plaintiff fell in. It was contended that the bricklayer was not the servant of the defendant. He was employed to do a certain act, and the mode of doing it, which had caused the injury, was certainly his own. Lord Ellenborough is reported as saying, " It is the rule of *respondeat superior;* what the bricklayer did, was by the defendant's direction." It does not appear how the bricklayer was employed. If not by independent contract, the case stands very well on the relation of master and servant. A case at *nisi prius,* so imperfectly reported, can have but little weight.

Another case at *nisi prius* was that of *Matthews* v. *West London Water Works,* 3 Campb. 403, in which the defendants, contracting with pipelayers to lay down pipes for the conveyance of water through the streets of the city, were held liable for the negligence of workmen employed by the pipelayers. The case is very briefly stated, and no reasons, given by Lord Ellenborough for his opinion, reported. It may stand on the ground that the defendants, having a public duty to discharge, as well as right given, could not delegate this trust, so as to exempt themselves from responsibility. This case is alluded to in *Overton* v. *Freeman,* 11 C. B. 872, hereafter to be examined, where Maule, J. makes the following remarks concerning it : " That is but a *nisi prius* case ; the report is short and unsatisfactory ; and the particular circumstances are not detailed."

In *Harris* v. *Baker,* 4 M. & S. 27,. and in *Hall* v. *Smith,* 2 Bing. 156, it was held that trustees or commissioners, entrusted with the conduct of public works, were not liable for injuries occasioned by the negligence of the workmen employed under their authority. These cases stand upon the ground that an action cannot be maintained against a man, acting gratuitously for the public, for the consequences of acts which he is authoized to do, and which on his part are done with due care and attention. They give no sanction whatever to the doctrine of *Bush* v. *Steinman.*

In *Randleson* v. *Murray*, 8 Ad. & El. 109, a warehouse-man in Liverpool employed a master porter to remove a barrel from his warehouse. Through the negligence of his men the tackle failed, and the barrel fell and injured the plaintiff. *Held,* that the warehouseman was liable. The case is put distinctly on the relation of master and servant. Lord Denman said: " Had the jury been asked whether the porters, whose negligence occasioned the accident, were the servants of the defendant, there can be no doubt they would have found in the affirmative." The injury occurred also in the direct use of the defendant's estate.

In *Burgess* v. *Gray*, 1 C. B. 578, the defendant, owning and occupying premises adjoining the highway, employed one Palmer to make a drain from his land to the common sewer. In doing the work, the men employed by Palmer placed gravel on the highway, in consequence of which the plaintiff, in driving along the road, sustained a personal injury. There was evidence that, upon the defendant's attention being called to the gravel, he promised to remove it. The matter left to the jury was whether the defendant wrongfully put, or caused to be put, the gravel on the highway. " I think," says Tindal, C. J. " there was evidence to leave to the jury in support of that charge. If, indeed, this had been the simple case of a contract entered into between Gray and Palmer, that the latter should make the drain and remove the earth and rubbish, and there had been no personal superintendence or interference on the part of the former, I should have said it fell within the principle contended for by my brother Byles, and that the damage should be made good by the contractor, and not by the individual for whom the work was done." After adverting to the evidence that the soil was placed upon the road with the defendant's consent, if not by his express direction, he says: " I therefore think the case is taken out of the rule in *Bush* v. *Steinman*, which is supposed to be inconsistent with the later authorities." Coltman, J. said: " I think there was evidence enough to satisfy the jury that the entire control of the work had not been abandoned to Palmer." Cresswell, J. said : " No precise contract for

the work was proved; nor was it shown that Palmer was employed to do the work personally, the mode of doing it being left to his judgment and discretion. I think there was abundant evidence to show that the defendant at least sanctioned the placing of the nuisance on the road." Erle, J. said: "The work was done with the knowledge of the defendant, and under his superintendence, and for his benefit." This well considered case, it is plain, so far from affirming the rule in *Bush* v. *Steinman*, is carefully and anxiously taken out of it by the counsel and by the court, with the strongest intimation by the latter, that, but for the difference, the action could not be maintained.

The latest case in England, referred to in the learned argument of the plaintiff's counsel, as affirming the doctrine of *Bush* v. *Steinman*, is *Sadler* v. *Henlock*, in the Queen's Bench, (1855,) 4 El. & Bl. 570. The defendant, with the consent of the owner of the soil and the surveyor of the district, employed one Pearson, a laborer, but skilled in the construction of drains, to cleanse a drain running from the defendant's garden under the public road, and paid five shillings for the job. *Held*, that the defendant was liable for an injury occasioned to the plaintiff by reason of the negligent manner in which Pearson had left the soil of the road over the drain. The case is put by all the judges distinctly on the relation of master and servant. And Crompton, J. said: " The test here is, whether the defendant retained the power of controlling the work. No distinction can be drawn from the circumstance of the man being employed at so much a day or by the job. I think that here the relation was that of master and servant, not of contractor and contractee. It is only on the ground of a contractor not being a servant that I can understand the authorities." The case of *Bush* v. *Steinman* is not referred to by either of the justices; but the distinction of servant and contractor runs through the whole case—a distinction which is wholly inconsistent with the doctrine of *Bush* v. *Steinman*.

In *Laugher* v. *Pointer*, 5 B. & C. 547, and 8 D. & R. 556, (1826,) where the owner of a carriage hired of a stablekeeper a pair of horses to draw it for a day, and the owner of the horses

provided a driver, through whose negligent driving an injury was done to the horse of a third person, it was held by Lord Tenterden, C. J. and Littledale, J. that the owner of the carriage was not liable for such injury; Bayley and Holroyd, Justices, dissenting. This case is, in substance, the one put by Mr. Justice Heath, in illustration and support of the judgment in *Bush* v. *Steinman.* In the opinions of Lord Tenterden and of Littledale, J., the doctrines of *Bush* v. *Steinman*, in their application to personal property, are examined, and their soundness questioned.

In *Quarman* v. *Burnett*, 6 M. & W. 499, (1840,) the same question arose in the Exchequer as in *Laugher* v. *Pointer* in the King's Bench, and the opinions of Lord Tenterden and Littledale, J. were affirmed, in a careful opinion pronounced by Baron Parke. In the course of it, he says: " Upon the principle that *qui facit per alium facit per se,* the master is responsible for the acts of his servant; and that person is undoubtedly liable who stood in the relation of master to the wrongdoer—he who had selected him as his servant, from the knowledge of or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey; and whether such servant has been appointed by the master directly, or intermediately through the intervention of an agent authorized by him to appoint servants for him, can make no difference. But the liability, by virtue of the principle of relation of master and servant, must cease where the relation itself ceases to exist."

These cases, however, do not overrule *Bush* v. *Steinman*, as to the liability of owners of real estate.

The case of *Milligan* v. *Wedge*, 12 Ad. & El. 737, and 4 P. & Dav. 714, (1840) is also in relation to the use of personal property, and rests upon the rule settled in *Quarman* v. *Burnett,* But in this case Lord Denman suggests a doubt whether the distinction as to the law in cases of fixed and movable property can be relied on.

The case of *Rapson* v. *Cubitt*, 9 M. & W. 710, (1842,) was this: The defendant, a builder, employed by the committee of a club to make certain alterations at the club-house, employed a

gasfitter by a subcontract to do that part of the work. In the course of doing it, by the negligence of the gasfitter, the gas exploded and injured the plaintiff. *Held*, that the defendant was not liable. The reasons upon which this decision is based do not well consist with the rule in *Bush* v. *Steinman*.

The case of *Allen* v. *Hayward*, 7 Ad. & El. N. R. 960, (1845,) is still more directly adverse. But we pass from these to cases directly in point.

In the cases of *Reedie & Hobbit* v. *London & Northwestern Railway*, 4 Exch. 244, 254, (1849,) the defendants, empowered by act of parliament to construct a railway, contracted under seal with certain persons to make a portion of the line, and, by the contract, reserved to themselves the power of dismissing any of the contractors' workmen for incompetence. The workmen, in constructing a bridge over a public highway, negligently caused the death of a person passing beneath, along the highway, by allowing a stone to fall upon him. In an action against the company, it was held that they were not liable, the terms of the contract making no difference. In the judgment of the court, given by Baron Rolfe, (now Lord Chancellor Cranworth,) alluding to the supposed distinction as to real property, the court say : " On full consideration, we have come to the conclusion that there is no such distinction, unless, perhaps, in cases where the act complained of is such as to amount to a nuisance ; and, in fact, that, according to the modern decisions, *Bush* v. *Steinman* must be taken not to be law, or, at all events, that it cannot be supported on the ground on which the judgment of the court proceeded." Without sanctioning this doctrine, as it affects a public trust, it is very plain that it directly overrules the doctrine of *Bush* v. *Steinman*.

The case of *Knight* v. *Fox*, 5 Exch. 721, (1850,) is, if possible, a stronger case in the same direction—a decision which it is plain could not have been made if the doctrines of *Bush* v. *Steinman* were the law of Westminster Hall.

There are three cases remaining. In *Overton* v. *Freeman*, 11 C. B. 867, (1851,) A contracted to pave a district, and B entered into a subcontract with him to pave a particular street. A sup-

plied the stones, and his carts were used to carry them. B's men, in the course of the work, negligently left a heap of stones in the street. The plaintiff fell over them and broke his leg. It was held, that A was not liable, even though the act complained of amounted to a public nuisance. And Maule, J. said that the case of *Bush* v. *Steinman* " has been considered as having laid down the law erroneously."

In *Peachey* v. *Rowland,* 13 C. B. 182, (1853,) the defendants contracted with A to fill in the earth over a drain which was being made for them across a portion of the highway from their house to the common sewer. A, after having filled it in, left the earth so heaped above the level of the highway as to constitute a public nuisance, whereby the plaintiff, in driving along the road, sustained an injury. The case had this other feature : A few days before the accident, and before the work was finished, one of the defendants had seen the earth so heaped over a portion of the drain; but beyond this there was no evidence that either defendant had interfered with or exercised any control over the work. It was held there was no evidence to go to the jury of the defendants' liability. *Bush* v. *Steinman* appears not to have been cited by counsel or alluded to by the court.

The still more recent case of *Ellis* v. *Sheffield Gas Consumers' Co.* 2 El. & Bl. 767, (1853,) cited by the counsel for the plaintiff, only determined that a party employing another to do an act unlawful in itself will be liable for an injury such act may occasion—very familiar and well settled law.

*Bush* v. *Steinman* is no longer law in England. If ever a case can be said to have been overruled, indirectly and directly, by reasoning and by authority, this has been. No one can have examined the case without feeling the difficulty of that clearheaded judge, Chief Justice Eyre, of knowing on what ground its decision was put. It could not stand on the relation of master and servant. That relation did not exist. It could not stand upon the ground of the defendant having created or suffered a nuisance upon his own land to the injury of his neighbor's property. The lime was on the highway. There is no rule to include it but the indefinitely broad and loose one

that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do—a rule which ought to have been and was expressly repudiated.

The case of *Leslie* v. *Pounds*, 4 Taunt. 649, not cited in the argument, has some resemblance to the cases before referred to. This was an action against the landlord of a house leased, who, under contract with the tenant, who was bound to repair, employed workmen to repair the house, and superintended the work. Being remonstrated with by the commissioners of pavements as to the dangerous state of the cellar, he promised to take care of it, and had put up some boards temporarily as a protection to the public. They proved insufficient, and the plaintiff falling through, the landlord was held liable. The case was decided on the ground that the landlord was making the repairs, and that the workmen were employed by him, and were his servants.

The suggestion is made that, whatever may be the result of the later cases in England, the doctrine of *Bush* v. *Steinman* has been affirmed in this country. The cases in this court we have already examined.

The case of *Bailey* v. *Mayor, &c. of New York*, 3 Hill, 531, and 2 Denio, 433, was an action brought against the corporation of New York, for the negligent and unskilful construction of the dam for the water works at Croton River, by the destruction of which, injury was occasioned to the mills of the plaintiff. The city was held responsible. This case rests well upon the ground that where persons are invested by law with authority to execute a work involving ordinarily the exercise of the right of eminent domain, and always affecting rights of third persons, they are to be liable for the faithful execution of the power, and cannot escape responsibility by delegating to others the power with which they have been intrusted.

*Blake* v. *Ferris*, 1 Seld. 48, seems to conflict with *Bailey* v. *Mayor, &c. of New York*. Certain persons were permitted to construct a public sewer at their own expense; they employed another person to do it at an agreed price for the whole work

the plaintiffs received an injury from the negligent manner in which the sewer was left at night. It was held that the persons who were authorized to make the sewer were not responsible for the negligence of the servants of the contractor. This case utterly rejects the rule of *Bush* v. *Steinman.*

The case of *Stevens* v. *Armstrong,* 2 Seld. 435, was this : A bought a heavy article of B, and sent a porter to get it; by permission of A, the porter used his tackle and fall; through negligence, the porter suffered the article to drop, by which C was injured. It was held, that the porter acted as the servant of B, and that A was not answerable. Yet this was an injury done on A's estate, by his permission, and in the use of his property. ` This case also rejects the rule of *Bush* v. *Steinman.*

In *Lesher* v. *Wabash Navigation Co.* 14 Ill. 85, where a corporation was authorized to take materials to construct public works, and contracted with others to do the work and find the materials, and the contractors nevertheless took the materials under the authority granted to the corporation, the corporation were held liable therefor. If the court could find that the materials were taken under the authority of the corporation, the case will stand perfectly well under the rule of *Lowell* v. *Boston & Lowell Railroad,* and *Bailey* v. *Mayor, &c. of New York.*

The cases of *Willard* v. *Newbury,* 22 Verm. 458, and *Batty* v. *Duxbury,* 24 Verm. 155, rest on the same principles.

In the case of *Wiswall* v. *Brinson,* 10 Ired. 554, the court held an owner of real estate responsible for the negligence of the servants of a carpenter with whom the defendant had contracted, for a stipulated price, to remove a barn on to his premises. This case (in which, however, there was a divided judgment, Ruffin, C. J. dissenting in a very able opinion,) certainly sustains the doctrine of *Bush* v. *Steinman.*

*De Forrest* v. *Wright,* 2 Mich. 368, not cited, is in direct conflict with the rule of *Bush* v. *Steinman.* A public, licensed drayman was employed to haul a quantity of salt from a warehouse, and deliver it at the store of the employer, at so much a barrel. While in the act of delivering it, one of the barrels, through the carelessness of the drayman, rolled against and injured a person

on the sidewalk. It was held, that the employer was not liable for the injury, the drayman exercising a distinct and independent employment, and not being under the immediate control and direction or supervision of the employer. This is a well considered case, rejecting the rule of *Bush* v. *Steinman*, and sanctioning the result to which we have been brought in the case at bar.

We have thus, at the risk of tediousness, examined the case at bar as one of authority and precedent. The clear weight and preponderance of the authorities at common law is against the rule given to the jury.

The rule of the civil law seems to have limited the liability to him who stood in the relation of *paterfamilias* to the person doing the injury. Inst. lib. 4, tit. 5, §§ 1, 2. 1 Domat, pt. 1, lib. 2, tit. 8, § 1. Dig. lib. 9, tit. 2, § 1.

Viewing this as a question, not of authority, but to be determined by the application to these facts of settled principles of law, upon what principle can the defendant be held responsible for this injury? He did not himself do the act which caused the injury to the plaintiff. It was not done by one acting by his command or request. It was not done by one whom he had the right to command, over whose conduct he had the efficient control, whose operations he might direct, whose negligence he might restrain. It was not an act done for the benefit of the defendant, and from the doing of which an implied obligation for compensation would arise. It was not an act done in the occupation of land by the defendant, or upon land to which, upon the facts, he had any title. To say that a man shall be liable for injuries resulting from acts done *near* to his land, is to establish a rule as uncertain and indefinite as it is manifestly unjust. It is to make him liable for that which he cannot forbid, prevent or remove. The case cannot stand on the relation of master and servant. It cannot stand upon the ground of nuisance erected by the owner of land, or by his license, to the injury of another. It cannot stand upon the ground of an act done in the execution of a work under the public authority, as the construction of a railroad or canal, and from the responsibility, for the careful and just execution of which, public policy will

not permit the corporation to escape by delegating their power to others. It can only stand, where *Bush* v. *Steinman*, when carefully examined, stands, upon the general proposition that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do—to adopt which would be to ignore all limitations of legal responsibility.

As the determination of this, the first and most material of the exceptions, may probably finally dispose of the cause, we have not considered the other points of exception to the rulings of the presiding judge.                     *New trial granted.*