DANIEL ENGEL, as Administrator, etc., Respondent, *v.* THE EUREKA CLUB, Appellant.

Where the owner of a building entered into a contract with a competent builder to make certain alterations therein, which included the taking down of a wall, the contractor to furnish the materials and to receive a fixed price for the whole work, and in consequence of negligence on the part of the contractor in taking down the wall, a work which was not intrinsically dangerous, the wall fell and killed plaintiff's intestate, *held,* that the contractor, not the owner, was liable for the damages; also that the fact that the wall had become weakened by age and decay did not affect the liability of the owner, it appearing that the wall was safe and would not have fallen if left as it was when the contract was made.

(Argued January 17, 1893; decided January 31, 1893.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the last Tuesday

of March, 1892, which granted a motion by plaintiff for a new trial, upon exceptions ordered to be heard in the first instance by said court to the granting of a motion for a nonsuit.

This action was brought to recover damages for the death of Frederica Engel, plaintiff's intestate, alleged to have been caused by the negligence of defendant.

The facts, so far as material, are stated in the opinion.

*Thomas Raines* for appellant.   An owner of real estate is not liable for the negligent act of an independent contractor, who is in every way competent, in a case where the injury is not occasioned by the doing of the work, but because of the work being done in a negligent manner. (*McCafferty* v. *S. D. & P. M. R. Co.*, 61 N. Y. 178; *Earl* v. *Beadleston*, 10 J. & S. 294; *Hexamer* v. *Webb*, 101 N. Y. 377; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 id. 181; *Harrington* v. *Vil. of Lansingburgh*, 110 id. 145; *Ferguson* v. *Hubbell*, 97 id. 510; *St. Peter* v. *Denison*, 58 id. 416; *Martin* v. *T. Assn.*, 30 Hun, 391; *Schile* v. *Brokhahus*, 80 N. Y. 618; *Bibbs* v. *N. & W. R.*, 31 Am. Law Reg. & Rev. 319.)

*Martin W. Cooke* for respondent.   As between the defendant and the injured parties in this case, there was, prior to the contract with Wagner, an existing and continuous legal duty or obligation arising out of the relations of the parties, which the defendant as owner of the premises with the existing wall, owed to the injured parties as occupants of the adjoining premises, and this duty or obligation was, in so far as the exercise of ordinary care and vigilance would enable it to do so, to keep the wall in question in such condition that it would not by any insecurity fall upon or injure the adjoining occupants. (*Mullen* v. *St. John*, 57 N. Y. 567; *City of Buffalo* v. *Holloway*, 7 id. 493; S. & R. on Neg. § 898.) The injury resulted from the omission to perform the duty owed by the defendant to the deceased. (S. & R. on Neg. §§ 83, 84, 175.) The questions arising out of the doctrine of *respondeat superior* do not arise in or apply to this case. (*McCafferty* v.

*S. D. & P. M. R. R. Co.,* 61 N. Y. 178.) In any case where there is an existing legal duty or obligation upon a party owing to another, the party owing the duty cannot be relieved from the performance of it by any act of his or any contract with a third person however skillful he may be. (*Storrs* v. *City of Utica,* 17 N. Y. 104; S. & R. on Neg. §§ 15, 83, 84, 175; *Masterton* v. *N. Y. C. & H. R. R. R. Co.,* 84 N. Y. 247; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 id. 181; *Brusso* v. *City of Buffalo,* 95 id. 679.) The proofs in this case would support a finding by the jury that the fall of the wall resulted from the performance of what Wagner agreed to do, or that it fell by reason of defects which existed when the contract was made, of which defects Wagner had no notice, but which defendant was presumed to know of or to guard against. (*Bower* v. *Prate,* L. R. [1 Q. B.] 321; *Parey* v. *Ashton,* Id. 314; *Baltimore* v. *O'Donnell,* 52 Md. 110.) The decision of the Special Term in this case is not in harmony with the opinion of the General Term upon its order for a new trial; that constituted the law of this case, and the doctrine as laid down in said opinion is sound. (*Woodman* v. *R. R. Co.,* 149 Mass. 335.)

ANDREWS, Ch. J. We are of opinion that the motion for a new trial should have been denied.

The defendant had purchased the premises in March, 1892, for its uses as a social club. It made a contract with a competent builder to alter the building thereon in accordance with a plan adopted. The builder was to furnish the new materials necessary and do the work for a fixed price. The improvement contemplated the taking down of a brick wall, sixteen feet high, on the north line of the premises, adjoining premises owned by one Ihrig, occupied in part by plaintiff as a tenant. The wall formed one side of a driveway on defendant's premises and was roofed over. The roof was formed by rafters extending from the main building to the brick wall and fastened to and resting upon a plate on the top of the wall, secured by bolts, and was covered with boards and shin-

gled. The wall had been erected 30 or 40 years, and was 8 inches thick and rested on a stone foundation. It had been worn away next to the driveway by contact with wagons, and the bricks had been broken along the line of contact to the depth of 3 or 4 inches. The wall on the Ihrig side was also in places decayed and the mortar had fallen out. The defendant had never occupied the premises, and when the contract for repairs was made the keys of the house were given to the contractor. The contractor commenced the work of taking down the wall by removing the roof which covered it, and taking down the rafters, which left the wall wholly unsupported, and the day after the roof was removed the wall fell over towards the Ihrig lot, and the wife of the plaintiff, with her child, who were in the yard near the wall, were killed.

The evidence tends to show culpable negligence in the manner of taking down the wall. It was shown that in consequence of its weakened condition, by reason of age and the decay spoken of, common prudence required that precautions should have been taken to prevent its falling either by shoring it up or by removing the roof and the wall in sections. The evidence is undisputed that this was the common and usual proceeding under similar circumstances. The officers of the defendant had no actual knowledge of the condition of the wall either before or during its removal, or how the work was being done, and they did not in any way interfere or direct in respect to the manner of doing the work.

It is the general rule that a party injured by the negligence of another must seek his remedy against the person whose actual negligence it was which caused the injury, and that such person alone is liable. (*King* v. *N. Y. C., etc., R. R.,* 66 N. Y. 182.) The case of master and servant is an exception, and the negligence of the latter is imputable to the master where the servant, in doing the act which occasions the injury, is acting within the scope of his employment. This exception rests upon most satisfactory reason, because the servant in the case supposed is acting in place of the master

and by his appointment, and the master who selects and controls the servant makes the servant his representative in his business.

But the exigencies of affairs frequently require that persons exercising independent employments should be entrusted by owners of property with its improvement, and in various relations and under varying conditions they are employed, not as servants, but as independent contractors to execute contracts which the person who secures their services is unable to execute himself, or the execution of which he prefers to commit to another. The duty which the contractor owes is defined by the contract or implied therefrom. In such cases the maxim *qui facit per alium, facit per se* has no appropriate application, and there is no reason founded upon public policy, or the relations between the parties to the contract, which should subject one party to the contract to liability to third persons, for the negligence of the other. The principle that no liability on the part of the innocent party in such cases exists, has become the settled doctrine of our law. It leaves an adequate remedy to the party injured, against the real author of the wrong. There are well understood exceptions to this rule of exemption. Cases of statutory duty imposed upon individuals or corporations; of contracts which are unlawful, or which provide for the doing of acts which when performed will create a nuisance, are exceptions. In cases of the first mentioned class the power and duty imposed cannot be delegated so as to exempt the person who accepts the duty imposed, from responsibility, and in those of the second class exemption from liability, would be manifestly contrary to public policy, since it would shield the one who directed the commission of the wrong. (*Storrs* v. *City of Utica*, 17 N. Y. 104; *Lowell* v. *L. & B. R. R. Co.*, 23 Pick. 24; *Hole* v. *S. S. R. Co.*, 6 H. & N. 488; *Butler* v. *Hunter*, 7 id. 826.) There are cases of still another class where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed, or, in the language of Judge Dillon, is

"intrinsically dangerous," in which case it is held that the party who lets the contract to do the act, cannot thereby escape from responsibility for any injury resulting from its execution, although the act to be performed may be lawful (2 Dillon on Mun. Corp. § 1029, and cases cited). But if the act to be done may be safely done in the exercise of due care, although in the absence of such care injurious consequences to third persons would be likely to result, then the contractor alone is liable, provided it was his duty under the contract to exercise such care. (*McCafferty* v. *L. D. & P. M. R. R. Co.*, 61 N. Y. 178; *Conners* v. *Hennessey*, 112 Mass. 96; *Butler* v. *Hunter, supra.*)

The application of these principles to this case exonerates the defendant from liability. The taking down of the wall was not intrinsically dangerous. The only danger to be apprehended was in doing it carelessly or unskillfully. It was in the manner of doing it and not in the thing itself. The danger of leaving the wall without support was obvious, and could have been easily avoided, and the usual method required that precautions should be taken. It was the duty of the contractor to take such precautions, because it was implied in his contract that he should take down the wall in a careful and proper manner (POLLOCK, C. B., *Butler* v. *Hunter, supra*). It does not change the situation of the defendant, that the wall had become weakened by age and decay. It is the general duty of the owner of premises to keep the walls of his building in a safe condition, so that they will not endanger his neighbor by falling, and if he negligently omits its performance and his neighbor is injured, the injury is actionable. (*Mullen* v. *St. John*, 57 N. Y. 567.) But the evidence is undisputed that the wall was safe and would not have fallen if it had been left as it was when the contract was made, supported by the roof. It was not a menace in its existing condition. It became dangerous only in consequence of the manner in which the contractor proceeded to take it down. It would probably have been less

liable to fall, although deprived of the support of the roof, if the wall had been in perfect repair when the contractor entered upon the work. But we perceive no causal connection between the neglect to repair and the injury to the plaintiff's intestate. The sole cause in a legal sense was the negligence of the contractor in omitting to do what he was bound to do. The performance of his duty would have prevented the injury. The exceptions to the admission or rejection of evidence present no material error. The order of the General Term should be reversed and judgment of nonsuit should be entered, with costs to defendant.

All concur.

Order reversed and judgment accordingly.