RENA YOUNG, by her next friend, v. THE FOSBURG LUMBER COMPANY.

(Filed 4 March, 1908).

1. **Contracts—Interpretation—No Ambiguity—Questions for Court.**
   The interpretation of a written contract, not ambiguous in its terms, is for the court, and should not be submitted to the jury.

2. **Same—Independent Contractor—Terms of Contract—Questions for Jury.**
   When the language of a written contract establishes, as a matter of law, the relation of an independent contractor between the parties, the only question to be submitted to the jury, in an action against the owner of the land for damages sustained by a third person, by the act of the independent contractor, is whether at the time of the alleged injury such contractor was working under and pursuant to the terms of the contract, or whether he was in truth acting in the capacity of an employee of the owner.

3. **Contracts—Independent Contractor—Negligence—No Control—No Liability.**
   In the absence of negligence in the selection of an independent contractor, or such inherent danger in the work to others as to impose the duty of absolute care, the owner of the premises is not liable for the acts of such independent contractor, he having no control over him or the selection of his servants, in the performance of the terms of the contract.

4. **Same—Character of Work.**
   Cutting standing timber trees on one's own land, not immediately adjacent to any public highway or residence, but near to a private path leading to a spring, is not so inherently dangerous as to impose upon the owner the duty of absolute care for the safety of persons using the path.

5. **Independent Contractor—Written Instrument—Pleadings—Evidence.**
   When the defense to an action to recover damages for personal injury is that the person who caused the injury complained

of was an independent contractor, a written agreement tending to prove that fact may be introduced in evidence, though not set up in the answer.

CLARK, C. J., dissenting, *arguendo;* HOKE, J., concurs in the dissenting opinion.

CIVIL ACTION, tried before *Lyon, J.,* and a jury, at June Term, 1907, of the Superior Court of HALIFAX County.

The defendant company, being the owner of standing timber on the lands described in the pleadings, entered into a contract in writing with W. T. Ferrell, by which he was to cut and remove the trees to the railroad. Defendant company agreed to furnish Ferrell one locomotive, logging cars, horses, harness and such light rails as were necessary, and to pay him $3.50 per thousand for all timber "logged." The contract provided that Ferrell was "to begin cutting and getting out the said timber and loading it on Seaboard cars within thirty days; and the said W. T. Ferrell shall have the full and complete control over the cutting and getting out of said timber, and the loading, hauling and shipping the same, and the Fosburg Lumber Company shall have no control whatever over the cutting, logging, hauling, shipping and loading the said timber; and the said W. T. Ferrell shall do said work in a good and workmanlike manner as an independent contractor." It was further provided that, when the timber was cut, or if the contract should sooner cease by consent, the property furnished by the company should be returned by Ferrell in good order, etc. The contract bears date 11 February, 1895. Ferrell began cutting the timber on a portion of the land a short time thereafter.

William Young, father of the plaintiff (who was a child about nine years of age), lived with his family in a house situated in a small clearing on the land upon which the trees were being cut, on 8 August, 1905. Running from the house, a part of the way through the woods, was a small footpath, used by Young's family for going to a spring, about 150 yards

distant, for the purpose of getting water for the use of the family.   On the morning of 8 August, 1905, the mother of plaintiff sent her, together with two other small children, to the spring for water.   The hands were sawing trees in the woods near the path.   As the children were returning from the spring, a pine tree, sawed by the hands, fell, the top or branches falling across the path and injuring the plaintiff. There was evidence tending to show the distance of the tree from the path, the character of the undergrowth, and opportunity for a person standing at the tree to see children along the path.   There was also evidence tending to show that the hands knew of the location of the path, the spring, Young's house, and that his family got water from the spring.   The testimony was in some respects conflicting.   There was also evidence tending to show that the presence of the hands was known to the mother of plaintiff, etc.

Defendant introduced the contract under objection by plaintiff.   Ferrell had been in the employment of defendant company some two or three years prior to the date of the contract, engaged in cutting timber on other lands.   Ferrell testified that he was cutting the timber "under the contract," and that defendant company had no control over him.   There was evidence on the part of plaintiff that at the end of each month the pay roll was made out and sent to defendant company, at Norfolk, and the money placed in envelopes for each employee and sent to Ferrell.   Ferrell testified, in regard to this matter, that he sent the company, in Norfolk, the pay roll of his hands, together with the number and size of the logs; that the company sent the amount due him in envelopes containing the amounts due the hands, for his convenience.   He said: "I got them to put it up (the money) in tickets for me.   I asked them to do this as a matter of convenience.   I did not have the time; there was only two of us there.   I attended to the woods and Mr. Vaughan to the desk, and they could get the change down there and make it better than we could.

They paid me in checks or money, whenever there was any balance due me, at $3.50 per thousand." The commissary belonged to him, and the hands were employed by him. The team, cars, track, etc., belonged to defendant company and were used by Ferrell under the terms of the contract. The hands who were cutting in the woods at the time plaintiff was injured testified that they were hired by Ferrell. The plaintiff introduced Vaughan, who was helping Ferrell. He says that, on 8 August, 1905, he was working for Ferrell and was paid by him; he was originally employed by defendant company. His testimony is not very clear as to the manner of his employment—that is, with whom he made the contract. He testified that the pay roll was made up, signed by Ferrell and sent to defendant company, who sent the money in envelopes containing the amount due each hand. Plaintiff sued by her next friend, alleging that defendant company, by its servants, was cutting the timber and negligently cut the tree which injured her, whereby she sustained damage, etc. Defendant denied that it was engaged in cutting the timber, or that it was in any respect negligent, etc. The defendant contended that Ferrell was an independent contractor and was cutting the timber under the contract put in evidence. The following issue was submitted to the jury: "Was plaintiff, Rena Young, injured by the negligence of defendant, as alleged?" The jury answered "Yes," and assessed her damage at $1,350.

Defendant, among other instructions, requested the court to instruct the jury: "That if they shall find from the evidence that the tree which fell upon and hurt the plaintiff was cut down by employees of W. T. Ferrell, and that said Ferrell was getting out the timber of the defendant company under the contract put in evidence ('Exhibit B'), then he would be an independent contractor, and the defendant company would not be responsible for the acts of his employees, and you would, therefore, answer the first issue 'No.'"

His Honor refused to give said instruction as asked, but struck out the words therein, "then he would be," and inserted in lieu thereof the word "as," and gave said instruction as so changed.   To his refusal to give said instruction as asked, and to said alteration of same, the defendant excepted.

"That if the jury shall find from the evidence that W. T. Ferrell was getting out defendant's timber from the tract of land whereon plaintiff's father and mother lived at the time plaintiff was hurt, under the contract put in evidence ('Exhibit B'), they should answer the first issue 'No.'"

His Honor gave said instruction, with the following modification:

"Provided you find that he was an independent contractor and that defendant had no control or direction over him; and in passing on that question you will take into consideration the evidence bearing on this question," and   *   *   *   testimony.

The defendant excepted to the failure of his Honor to give said instruction as prayed, and to said qualification of same.

There are other exceptions in the record, not necessary, in view of the opinion of the Court, to be noted.

From a judgment upon the verdict defendant appealed.

*S. G. Daniel, W. E. Daniel* and *Claude Kitchin* for plaintiff.

*Day, Bell & Dunn, Murray Allen, Shepherd & Shepherd* and *E. L. Travis* for defendant.

CONNOR, J., after stating the case: Was Ferrell, by the terms of the written contract made between defendant and himself, a servant of defendant, employed to hire hands and superintend the work of cutting, hauling and loading the trees, or was he an independent contractor?   The answer to this question depends, primarily, upon the construction of the written contract.   Defendant requested his Honor to construe the contract and instruct the jury, as a matter of law, that

Ferrell was an independent contractor, submitting to them the question whether he was working under the contract. His Honor left the question whether Ferrell was an independent contractor to the jury. In one aspect of the question this was error. The construction of the language of the contract, being free from ambiguity, was for the court. Assuming that the contract was made in good faith and was not a mere colorable device, resorted to for the purpose of avoiding responsibility for Ferrell's acts, we are of the opinion that it constituted Ferrell an independent contractor.

"An independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified." Pollock Torts, 78; Barrows on Neg., 160. *Mr. Justice Walker,* in *Craft v. Lumber Co.,* 132 N. C., 151, says: "When the contract is for something that may be lawfully done, and it is proper in its terms, and there has been no negligence in selecting a suitable person in respect to it, and no general control is reserved, either in respect to the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work and not in the several steps as it progresses, the latter is not liable to third persons for the negligence of the contractor as his master."

In *Engel v. Eureka Club,* 137 N. Y., 100, *Andrews, C. J.,* says: "The exigencies of affairs frequently require that persons exercising independent employments should be entrusted by the owners of property with its improvement, and in various relations and under varying conditions they are employed, not as servants, but as independent contractors, to execute contracts which the person who secures their services is unable to execute himself, or the execution of which he prefers to commit to another." In *Knowlton. v. Hoit,* 67 N. H., 155,

it appeared that "The defendant bought the standing timber on a lot adjoining the plaintiff's land and made a contract with one Hazen to cut the standing trees into timber, at an agreed price per thousand feet. Hazen performed the contract, hiring and paying his men. Beyond making the contract and paying the price agreed, the defendant had nothing to do with cutting the timber. The defendant took the lumber from the lot. In felling the trees some of them fell upon and across plaintiff's fence and wall, breaking some of the boards.    *    *    *    The defendant did not own the land upon which the timber was cut." *Smith, J.,* said: "Hazen was a contractor, exercising an independent employment and selecting his own servants and workmen. He was not an ordinary laborer, engaged in cutting the trees, nor acting under the control of the defendant. The contract was to do an act lawful in itself, and the authority conferred upon Hazen was to do it in a lawful way. The maxim *Respondeat superior* does not apply."

It is not easy to find any essential difference between this and the case before us. Ferrell was to employ the hands, pay them, cut the timber in his own way, free from any control by defendant, and to receive $3.50 per thousand feet. We can perceive no difference in principle between this case and one in which the owner of wood contracts with a woodcutter to cut "cord wood" at so much per cord, or one wherein "a ditcher" is employed to dig ditches on his land at a fixed price per foot, or a carpenter to build a house of fixed dimensions, or numerous other contracts made almost daily by our people. If the contract is made in good faith, we do not perceive how it can be said that the owner of the land is in either case liable for the acts, either contractual or tortious, of the person to whom he commits the execution of the work, without doing violence to the law which "has become the settled doctrine of our land." As is well said by an eminent Chief Justice, "There is no reason, founded on public policy or the relation

between the parties to the contract, which should subject one party to the contract to liability to third persons for the negligence of another." We find nothing in the evidence which, as a matter of law, changes the relation established by the written contract. It is said, however, that, notwithstanding the language of the written contract, as a matter of fact Ferrell was the mere servant and employee of defendant, and that the writing is a device resorted to for the purpose of protecting defendant from liability. It is clear that Ferrell does not become an independent contractor simply because the writing so styles him. Whether he is one depends upon the terms upon which he, in truth, enters upon and cuts the defendant's timber. If, as a fact, notwithstanding the language of the writing, defendant exercises a control over him in the selection and employment of the laborers—if defendant pays them and directs the manner in which they perform the service; in other words, if the writing does not truthfully set forth the agreement between Ferrell and defendant, and the jury should so find, then he is not an independent contractor. If he was not acting under the written contract, but as the servant or employee of defendant, and the laborers who cut the trees are the servants of defendant, it would, of course, be liable for their negligence. Plaintiff insists that there is evidence fit to be submitted to the jury tending to establish this contention. As the case was not tried or submitted to the jury in this view, we forbear any discussion of the question, or whether there is any evidence bearing upon it. Plaintiff next insists that, conceding Ferrell is an independent contractor, the character of the work was so essentially dangerous that, under one of the exceptions to the rule of nonliability, defendant owed an absolute duty to third persons passing along the path over the land which it cannot put away by committing the work to an independent contractor. It is conceded that, upon grounds of public policy, certain exceptions are made by the law to the general rule. The one upon which plaintiff

relies is well stated by *Andrews, C. J.:* "Where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed, or is intrinsically dangerous, it is held that the party who lets the contract to do the act cannot thereby escape responsibility for any injury resulting from its execution, although the act to be performed may be lawful. But if the act to be done may be safely done in the exercise of due care, although, in the absence of such care, injurious consequences to third persons would be likely to result, then the contractor alone is liable, provided it was his duty under the contract to exercise such care." *Engel v. Club, supra.* As illustrative of the principle, the language of the Chief Justice is appropriate: "The taking down the wall was not intrinsically dangerous. The only danger to be apprehended was in doing it carelessly or unskillfully. It was in the manner of doing it, and not in the thing itself." In *Knowlton v. Hoit, supra,* there is no suggestion that the felling timber trees in the forest is intrinsically dangerous. Blasting rock has been held to be so. 16 Am. and Eng. Enc., 201; *Booth v. R., W. & O. T. R. R.,* 140 N. Y., 207, where the question is discussed at length. In that case the Court held that blasting rock was not intrinsically dangerous. *James v. McMinimy,* 93 Ky., 471. Burning brush is held not intrinsically dangerous. *Shute v. Princeton,* 58 Minn., 337; *Tibbetts v. Railroad Co.,* 62 Me., 437; *Bibb v. Railroad Co.,* 87 Va., 711; *Hilliard v. Richardson,* 69 Mass., 349. It has never been supposed that cutting down one's own trees in a forest was so intrinsically and essentially dangerous as to impose upon the owner of the land or the trees the absolute duty of looking out for persons who might be passing along a private footpath. The fact that there was such a path near the trees would impose the duty of a reasonably careful lookout for persons who might be passing over it. The measure of the duty would be affected by the frequency of its use, the knowledge of the persons cutting, etc., but the duty is relative and

not absolute. The principle upon which rest the rights and liabilities of the owners of property upon which work is being done by independent contractors is well settled and uniformly recognized. It is founded in wisdom and sound policy. The limitations which have been put upon the immunity from liability are also settled. The application of the exceptions has given rise to much discussion and frequently to some conflict in the views of courts. The testimony here shows that the timber trees belonging to defendant were in a pine forest; that William Young resided on the land, in a house surrounded by a clearing of about twelve acres. It does not appear that the cutting endangered his premises. The laborers had been cutting for several days in the neighborhood of the house. There is some conflict in the testimony in regard to the size, character, etc., of the undergrowth and its relation to the path. These were questions for the jury upon the question of negligence.

The plaintiff objected to the introduction of the written contract, on the ground that it was not set up in the answer. We concur with his Honor that it was not necessary to do so. It was admissible to show defendant's relation to the laborers engaged in cutting. It might be well to submit the question raised by the contention of defendant in this respect to the jury in a separate issue or question. This, however, is in the discretion of the court. Revisal, sec. 527. No suggestion is made in the record, or the briefs, that defendant was negligent in the selection of Ferrell for the work. It appears that he had been in the service of the company before entering into the written contract.

There is a number of other exceptions in the record bearing upon the question of negligence. As the case goes back for a new trial, we deem it best not to decide them; they may not arise upon a second trial. For the error in the charge pointed out, there must be a

New Trial.

CLARK, C. J., dissenting: Not controverting in the least the propositions of law set out in the opinion in chief, it would seem that the Judge submitted and the jury passed upon the identical question which the case is now sent back to try, *i. e.,* whether the written contract (which, on its face, made Ferrell an independent contractor) was *bona fide* or in fact a pretext and an evasion. The court gave both prayers of the defendant, that if Ferrell was getting out timber under the written contract he was an independent contractor, and to answer the issue "No," adding, "provided you find that he was an independent contractor and that the defendant had no control or direction over him, and in passing on that question you will take into consideration the evidence bearing on this question." The jury found, under this charge, that, notwithstanding the written contract, as a matter of fact and in truth he was not an independent contractor. There was ample evidence to justify such finding. The pay rolls were sent to the lumber company, at Norfolk, Va., and then the money for that amount was sent Ferrell to pay off the hands. The teams belonged to said company; the right of way and the track belonged to the company; the logs were shipped by the lumber company. Ferrell had been their employee prior to this contract, and the contract does not seem in any way to have changed his method of dealing with the company. There was other evidence, *pro* and *con,* and the verdict of the jury, under the charge, can be understood only as a finding that Ferrell was not a *bona fide* independent contractor. It should not be necessary to try that question over again.