It follows that the order appealed from should be reversed and the application to punish for contempt denied.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Order reversed on the law and facts, with costs, and application to punish for contempt of court denied. Certain findings of fact disapproved and reversed and new findings made.

Elizabeth Harrington et al., Respondents, v. 615 West Corp., Appellant, and David Katz et al. Doing Business as Starlight Painting Company, Appellants-Respondents.

First Department, May 8, 1956.

*Arthur C. Parker* of counsel (*William J. Tropp*, attorney), for appellant.

*James A. Doherty, Jr.*, of counsel (*Doherty & Doherty*, attorneys), for appellants-respondents.

*Lawrence Robert Wild* for respondents.

FRANK, J. In this negligence action, plaintiff was awarded judgment against the defendants after a nonjury trial. There is ample proof in the record to sustain the judgment insofar as the plaintiff is concerned.

On this appeal, the crucial problem involves the right of defendant 615 West Corp. to indemnification from defendants David Katz and Morris Weinberg, doing business as Starlight Painting Company.

Defendant 615 West Corp. was the owner of the building located at 615 West 186th Street, in the city of New York, wherein plaintiffs resided. Defendants Katz and Weinberg had been engaged by the landlord prior to the date of the occurrence to paint and decorate various portions of the building, including the outside window trim and the fire escapes. The job was under the supervision of defendant Katz who was a licensed rigger. The painting of the window trim was performed by the use of a scaffold which enabled it to be done from the top floor downward to the ground floor. The scaffold was attached to grappling irons which extended over the coping of the roof. To secure the grappling irons and the scaffold, ropes were strung from the upper end of the grappling irons to some permanent part of the roof such as a standpipe or chimney.

The record discloses, without dispute, that up to the time of the accident the scaffold and the ropes had been progressively moved around the building for the application of the first coat of paint which was completed in the area where the accident occurred. The equipment remained there for one or two days prior to the date of the occurrence while the second coat was being applied to the windows and fire escapes in this area before the scaffolds were to be shifted in reverse order to the point of beginning.

In one area of the roof, clotheslines were maintained for the convenience of tenants. On August 19, 1953, Mrs. Harrington, a tenant in the building and an invitee, therefore, to that section, went there to hang some diapers to dry. As she entered on the roof and started walking towards a clothesline, she tripped over a taut rope which extended five or six inches above the surface of the roof from the coping to a standpipe. It was for the injuries thus received that plaintiffs were awarded judgment.

There is no dispute that the rope over which Mrs. Harrington fell was owned by the contractors and had been affixed by their employee and that no actual notice of the condition was ever given to the owner.

If the landlord here were not chargeable with a nondelegable duty to its invitee, the tenant, it would not be liable. The rule that an innocent owner is not responsible for the negligence acts of his independent contractor has not been abrogated (*Hyman* v. *Barrett*, 224 N. Y. 436; *Engel* v. *Eureka Club*, 137 N. Y. 100, 104–105; *Joyce* v. *Convent Ave. Constr. Co.*, 155 App. Div. 586, 589).

The landlord in its answer pleaded a cross complaint against the codefendant, the painting contractors, alleging in substance that the contractors were the active and primary tort-feasors.

After the completion of the proof, the trial court dismissed the cross complaint " upon the ground that both defendants are joint tort feasors." It found that plaintiff was on the roof by permission of the landlord; that the rope over which she fell was placed there by defendant painting company or its employees and had been at the same place all of the previous day and the portion of the day in question prior to the accident; that the contractors had for ten days strung ropes in various positions on the roof for the purpose of securing the scaffolds and for five days the ropes crossed the roof in the area where the tenants were allowed to use the clotheslines. The court held " that both defendants were negligent — the defendant Starlight in placing of the ropes which constituted obstructions, and that the defendant 615 West Corporation was negligent in allowing the roof to be encumbered and a condition of danger created on it. * * * that although this was done as an incident of the work for which

the defendant 615 West Corporation would not in and of itself be liable, that as it created a dangerous condition which lasted a sufficient length of time prior to the happening of the accident to have given them notice thereof, they are responsible for not correcting it.''

It thus appears that the landlord has been held liable to the plaintiffs because (1) it permitted a dangerous condition to exist; (2) it had constructive notice thereof.

It remains for us to decide whether these derelictions also make it a joint tort-feasor *in pari delicto* with the contractors who obviously actively created the dangerous condition, or whether it is entitled to judgment over on its cross complaint. There was no proof in the record that the contractors were not competent in the performance of the work for which they were engaged. It was not contended that the landlord supervised the work or exercised any dominion over the contractors or its employees, nor that the painting company was not an independent contractor. As between the landlord and the painting company, it cannot be contended that the former was required to employ an agent to see to it that the latter in placing the scaffolds did so in such a manner as not to interfere with the free movements of others. The owner had a right to rely, as it did, upon the contractor to perform the work properly. '' The primary obligation to keep the premises free from danger to third persons undoubtedly rested on the general contractor.'' (*Tipaldi* v. *Riverside Memorial Chapel*, 273 App. Div. 414, 420.)

Although we do not know the provisions of the contract between the landlord and the painters, implicit therein, however, and whether it was oral or written, was the requirement that it be performed competently and without negligence. The Court of Appeals, 2d Circuit (*Palazzolo* v. *Pan-Atlantic S. S. Corp.*, 211 F. 2d 277) in granting judgment over to a ship owner as against a stevedoring contractor held that the contractor was obligated to perform its work in a reasonably safe manner and that its negligence was the '' primary '' and '' active '' cause of the accident. This, despite the fact that the owner who recovered judgment had an officer of the vessel present to supervise the loading (footnote p. 279). In affirming the Court of Appeals, 2d Circuit, the United States Supreme Court (*Ryan Co.* v. *Pan-Atlantic Corp.*, 350 U. S. 124, 133) stated, '' Competency and safety of stowage are inescapable elements of the service undertaken.''

The theory of indemnification over by the primary tort-feasor to another held equally liable with respect to a third person is

still in evolution. There is an increasing body of decisional law which seeks to develop, clarify and distinguish the rules determining the respective liability as between defendants who are held equally accountable to an innocent plaintiff. The cases sometimes involve narrow distinctions and the determining factors depend largely upon the precise facts in each action.

The development of the concept may be traced to the landmark case of *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475, 487) in which it was said, " Where the parties are not equally criminal, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators." (See, also, *City of Rochester* v. *Montgomery*, 72 N. Y. 65.) Following a series of cases which involved municipalities who sought indemnity after having been held liable for conditions created or caused by some third party, the rule was extended to other situations. In *Oceanic Steam Nav. Co.* v. *Compania Transatlantica Espanola* (134 N. Y. 461, 468) the court said: " The right to indemnity stands upon the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled  *  *  *  to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him."

By logical and inexorable development a series of cases evolved, of particular concern here, respecting owners and contractors or contractors and subcontractors. (*Scott* v. *Curtis*, 195 N. Y. 424; *Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214; *Phœnix Bridge Co.* v. *Creem*, 102 App. Div. 354.)

In *Schwartz* v. *Merola Bros. Constr. Corp.* (290 N. Y. 145, 152) the Court of Appeals said: " It is true that an owner is not liable for the negligence of an independent general contractor unless the duty of care in performing the work is non-delegable. In other words, where the danger arises merely because of the negligence of the independent contractor or his employees, which negligence is collateral to the work and which is not reasonably to be expected, the owner cannot be held liable to a third party. But where from the nature of the work the duty of care in its performance is non-delegable and the owner is put on notice of the existence of such a dangerous condition, he may properly be held liable to a third party injured by the negligent act of a subcontractor or his employees." (See *Wright* v. *Tudor City Twelfth Unit*, 276 N. Y. 303, 307, and *Lockowitz* v. *Melnyk*, 1 A D 2d 138.)

Adopting this rationale, it would appear that in this case notice of the dangerous condition is the principal factor which

imposes liability upon the landlord insofar as the plaintiff is concerned. The trial court, however, went further. It interpreted its finding of constructive notice as making the landlord *particeps criminis* and *in pari delicto* with the painting contractor who created the dangerous condition.

Absent liability imposed by statute such as the Labor Law, the case at bar is clearly distinguishable from those in which the owner or general contractor is held liable for the derelictions of contractors or subcontractors by reason of the fact that he exercises supervision, dominion or control over their activities (*Good Neighbor Federation* v. *Pathe Ind.*, 202 Misc. 951, affd. 281 App. Div. 968). Here, there can be no dispute that the landlord exercised no such dominion over the contractors. It did not direct the placing of the ropes, nor direct the manner or the time of the performance of the work, or the area in which it was to be performed from day to day. There was no proof that the landlord even knew that ropes were required.

Even in situations where liability is imposed by statute (Vehicle and Traffic Law, § 59) judgment over against one primarily and actively negligent has been held proper (*Gorham* v. *Arons*, 282 App. Div. 147, affd. 306 N. Y. 782; *Traub* v. *Dinzler*, 309 N. Y. 395).

Here, the contractors created the condition. Their act was the primary cause of the danger which brought injury to the plaintiff. The owner, if guilty of any negligence, was chargeable, at best, with the act of omitting to correct a dangerous condition. Although it was virtually conceded that the landlord had no actual notice, the trial court held that such a state of circumstances was shown that notice would be implied. The dissent, in holding the landlord to be *in pari delicto* with the contractors, is largely predicated upon the owner's omission to correct the dangerous condition created by the painters. The conclusion reached with respect to it is necessarily based upon the existence of notice to the landlord whether actual or constructive.

Constructive notice has sometimes been defined as notice imputed to a person not having actual notice and an essential part of the imputation is that the person sought to be charged is in fact ignorant of the facts (39 Am. Jur. Notice & Notices, § 7, p. 236).

While we do not deem it necessary upon the facts in this action to differentiate actual from constructive notice, several cases involving indemnification do make the distinction. In *Schwartz* v. *Merola Bros. Constr. Corp.* (290 N. Y. 145, 156, *supra*) the court said, " Under its contract Cerussi was in active supervision of the work. Consequently it may have had actual, rather than

merely constructive, knowledge of the existence of a dangerous condition.''

In *Ruping* v. *Great Atlantic & Pacific Tea Co.*, the cross complaint was dismissed. On appeal (283 App. Div. 204, 206), it was reinstated, the court holding: '' This case would seem to present a classic instance of a right of recovery over, against a primary wrongdoer whose misconduct had created a dangerous condition, by one who was held liable for failure to discover and remedy the danger. [Citing cases.] There is, however, a recognized exception to this principle of indemnity. The one seeking indemnity may be barred from recovering from the creator of the danger, if ' after discovery of the danger, he acquiesced in the continuation of the condition ' * * * This exception depends upon a finding of actual notice of the dangerous condition. Obviously, in a case where there is no actual notice but there is only constructive notice, because of failure to discover that which could reasonably have been discovered, the defendant cannot be charged with acquiescence in the dangerous condition as a bar to indemnity.''

Even by construing its conduct in a light most favorable to plaintiff and to the codefendants, the landlord here was found to be a joint tort-feasor as the result of an act of omission, in contradistinction to the affirmative and primary act of the contractor in the placement of the rope over which plaintiff fell. If the Court of Appeals (298 N. Y. 686, 688) in affirming this court in *Tipaldi* v. *Riverside Memorial Chapel,* could justify indemnification although '' the owner and contractor had been found guilty of the same degree of passive negligence,'' how much stronger is the position of the appellant in the case at bar in view of the marked difference in degree of culpability.

*McFall* v. *Compagnie Maritime Belge* (304 N. Y. 314) is generally accepted as the leading case in this State upon the subject. There, the plaintiff was held to be an invitee aboard the vessel owned by the defendant (p. 324). The defendant Belgian Line admitted that it was chargeable with whatever knowledge it acquired as to the nature and characteristics of the cargo carried, and that the master of its vessel was in duty bound to see that cargo was appropriately stowed. The opinion by Judge CONWAY contains several matters of cogency here. Through him, the court said (p. 328): '' Where several tort-feasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not

only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act.'' The court continued (p. 330): '' The evidence earlier outlined shows that Belgian Line was guilty of a fault of omission whereas Transoceanic, in negligently handling the drums, and Dow, in supplying inadequate drums, were guilty of faults of commission * * * while that is not always determinative, since either a fault of omission or one of commission may constitute active negligence, it seems to us that the factual disparity between the delinquency of Transoceanic and Dow and that of Belgian Line is so great here that the jury was justified in concluding that Belgian Line's fault of omission was only passive negligence.''

As in this last excerpt from the *McFall* case, the '' factual disparity between the delinquency of '' the painting contractors and the landlord is so great, that to permit the contractors to escape from the assumption of their full responsibility by requiring the landlord to bear the burden of equal contribution rather than to be indemnified would, in effect, constitute the landlord as an insurer to the extent of its contribution for the dereliction of its independent contractor.

Upon the entire record we must find that the landlord and the painting contractor were not *particeps criminis* and were not *in pari delicto*. The acts of omission committed by the landlord were at best, in this context, a form of passive or secondary negligence, whereas the acts of the painting contractors in the placing and movement of the ropes, without adequate warning to the plaintiff and without adequate safeguards, constituted active and primary negligence. Under the circumstances, therefore, the judgment of the court below dismissing the cross complaint should be reversed, and judgment on the cross complaint in favor of the landlord and against the painting contractor should be entered.

Accordingly, the judgment of the court below should be modified as indicated herein and, as so modified, affirmed.

BOTEIN, J. (dissenting). Defendants have properly been adjudged tort-feasors and are both liable to plaintiff. The joint delinquency of defendants having been established, it is in the frame of their dealings with one another that we must look to ascertain whether the '' factual disparity '' between their adjudged delinquencies (*McFall* v. *Compagnie Maritime Belge*, 304 N. Y. 314, 33C) was so decisive as to warrant granting the landlord judgment over against the contractor. It is in such

a setting that we can best determine whether the adjudication of landlord's liability was simply the vicarious consequence of its nondelegable duty to its invitee, or whether it resulted from more affirmative acts of omission or commission.

Certainly, in painting the house and in securing the scaffold that was necessary to paint the house, the contractor assumed the primary responsibility. Its relationship with the landlord contemplated that the contractor exercise complete control over the manner of performance of the job and over the materials, brushes and appliances it used on the job. It was never contemplated that the landlord possessed the skill or resources to supervise or participate in the actual painting of the house or in the manipulation of the painting paraphernalia. So, if the rope that caused the accident had been defective or had been strung or located negligently on the roof, plaintiff's injuries would have been caused by the negligent performance of that portion of the job which had been committed exclusively to the control of the contractor by the landlord. And in such event, the fault of the contractor, as weighed in the scales of defendants' relative responsibilities, would be so much heavier as to require it to indemnify the landlord.

But the accident did not occur for any of these reasons; nor does the record disclose any other manner or any other place in which the scaffold could have been secured to the side of the building with less risk to persons visiting the roof. The defendants' negligence, as asserted by plaintiff, lies solely in their failure to take adequate safety measures to warn or protect invitees against the dangers posed by the properly installed rope. Reasonable precautions might have taken such form as placing barriers alongside the rope, or posting a sign on the door leading to the roof.

Of course, the contractor's responsibility did not end with stringing the rope across the roof carefully and in accordance with sound practice. It owed the further duty of following through to safeguard persons lawfully using the roof against the hazards that had necessarily been created. This was undoubtedly part of the job that it had undertaken to perform on behalf of the landlord; but at this point the contractor found a partner to share its responsibilities. That part of the job requiring notice to invitees and proper safeguards in relation to the dangerous condition no longer remained substantially under the control of the contractor; nor was it preponderantly the contractor's responsibility. It was also the landlord's duty to keep the roof to which it invited tenants free from dangerous encumbrances. The landlord omitted to discharge a co-ordinate

responsibility that was fully as fundamental as that resting upon the contractor; and therein lies the distinction between this case and the *McFall, Tipaldi* and other cases cited in the majority opinion.

We cannot on this record hold that the Trial Justice was not justified in finding that the landlord had ample notice — constructive though it was — of the dangerous condition, and that it failed to take requisite measures to protect its tenants. Defendants' faults of omission may constitute active negligence (*McFall* v. *Compagnie Maritime Belge, supra*) and were the proximate cause of plaintiff's injuries.

At the very least, it would appear that there was not such a factual disparity and delinquency as between defendants as to require rejection of the finding of the learned Trial Justice that both defendants were joint, primary tort-feasors.

The judgment should be affirmed in all respects.

PECK, P. J., and COX, J., concur with FRANK, J.; BOTEIN, J., dissents and votes to affirm in opinion, in which RABIN, J., concurs.

Judgment modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.