BRIDGET BURKE, as Administratrix of JOHN BURKE, Deceased, Respondent, v. JOHN B. IRELAND, Appellant, Impleaded with Others.

166   305
167   221
166   305
f168  376

NEGLIGENCE — OWNER OF LAND NOT RESPONSIBLE FOR NEGLIGENCE OF INDEPENDENT CONTRACTOR IN CONSTRUCTING A BUILDING THEREON. An owner of land in a city, who undertakes to erect a building thereon, and employs a competent architect to draw the plans and specifications and to supervise the work and a competent contractor to construct the foundations and building, is not responsib'e for an accident caused by the defective execution by the contractor, of a competent plan approved by the building department of the city government and the failure of the architect to carefully inspect the work, since the contractor and architect are not the agents or servants of the owner, but are in the exercise of independent callings, and the negligence of either in the execution of the plan cannot be imputed to the owner.

*Burke* v. *Ireland,* 47 App. Div. 428, reversed.

(Argued February 5, 1901; decided March 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 2, 1900, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* and *Ira D. Warren* for appellant. The complaint should have been dismissed on the ground that the plaintiff failed to prove the cause of action therein pleaded. (*Southwick* v. *F. Nat. Bank,* 84 N. Y. 420; *Truesdale* v. *Sarles,* 104 N. Y. 167; *Day* v. *Town of New Lots,* 107 N. Y. 148; *Reed* v. *McConnell,* 133 N. Y. 425.) The conceded cause of the fall of the building being the improper construction of the concrete foundation under pillar No. 3, and such construction having been a deviation from the plans and specifications for the building, and wholly the act of Parker, and in violation of his contract, and such construction having been

made without the knowledge of the appellant, he is not responsible for the death of the plaintiff's intestate. (*Pack* v. *Mayor, etc.,* 8 N. Y. 222; *Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *McCafferty* v. *S. D. & P. M. R. R. Co.,* 61 N. Y. 178; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 181; *Charlock* v. *Freel,* 125 N. Y. 357; *Engel* v. *Eureka Club,* 137 N. Y. 100; *Negus* v. *Becker,* 143 N. Y. 303; *Vogel* v. *Mayor, etc.,* 92 N. Y. 10; *Herrington* v. *Vil. of Lansingburgh,* 110 N. Y. 148; *Berg* v. *Parsons,* 156 N. Y. 109.) The judgment cannot be sustained upon the theory that the defendant violated the Building Law. (*Hawke* v. *Brown,* 28 App. Div. 37; *De Kay* v. *Bliss,* 4 N. Y. S. R. 728; 120 N. Y. 96.) The judgment cannot be sustained on the ground that the defendant is liable for the defective construction of the foundation under column No. 3. (*Fox* v. *Ireland,* 46 App. Div. 541; *Woolsey* v. *Funke,* 121 N. Y. 87; *Nicoll* v. *Sands,* 131 N. Y. 19; *Kumberger* v. *Congress S. Co.,* 158 N. Y. 339.)

*Charles J. Patterson* for respondent. The duty to pass upon and determine the sufficiency of the bed or bottom on which the concrete was to rest devolved upon Ireland, or his agent, who had complete control over the construction at that point. (*Vogel* v. *Mayor, etc.,* 92 N. Y. 18; *Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *Pack* v. *Mayor, etc.,* 8 N. Y. 222; *Goldschmid* v. *Mayor, etc.,* 14 App. Div. 135; *R. R. Co.* v. *Hanning,* 15 Wall. 649; *Schwartz* v. *Gilmore,* 45 Ill. 455; *Camp* v. *Church Wardens,* 7 La. Ann. 321; *Cincinnati* v. *Stone,* 5 Ohio St. 38; *Speed* v. *A. Ave. R. R.,* 71 Mo. 303; *City of St. Paul* v. *Seitz,* 3 Minn. 297.) When it became necessary, the work of preparing or improving the bottom for the concrete devolved upon Ireland. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Smith* v. *B., C. & M. R. R. Co.,* 36 N. H. 458.) After the defective foundation was laid, Ireland adopted it by directing an additional story to be put into the building, thus greatly increasing the weight and bringing on the collapse. (*Heffernan* v. *Benkard,* 1 Robt. 432; *Gilbert* v. *Beach,* 16 N. Y. 608; *Dressell* v. *City of*

*Kingston*, 32 Hun, 533; *Lockwood* v. *Mayor, etc.*, 2 Hilt. 66; 2 Thomp. on Neg. 900, 901; 1 S. & R. on Neg. § 175.) Behrens was the agent of Ireland for the purpose of examining and approving the bed or bottom before the concrete was placed in it. (*Del Genovese* v. *T. A. R. R. Co.*, 13 App. Div. 412; *Goldschmid* v. *Mayor, etc.*, 14 App. Div. 135; *Mulholland* v. *Mayor, etc.*, 113 N. Y. 631; *Thomas* v. *Stewart*, 132 N. Y. 580; *Seymour* v. *L. D. Co.*, 20 N. J. Eq. 396.) The plan of the building was dangerous as applied to defendant's land or as applied to any land, and this was one of the proximate causes of the accident. (*Defond* v. *State*, 30 Md. 179; *Timlin* v. *S. O. Co.*, 126 N. Y. 514; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 575; *Scandell* v. *Construction Co.*, 50 App. Div. 512; *Larkin* v. *Washington M. Co.*, 45 App. Div. 6; *Wood* v. *Town of Gilboa*, 76 Hun, 175; 146 N. Y. 383; *Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 127 N. Y. 657; *Ivory* v. *Town of Deerpark*, 116 N. Y. 477; *Kennedy* v. *Mayor, etc.*, 73 N. Y. 365; *Ring* v. *City of Cohoes*, 77 N. Y. 83.) Defendant did not prove conclusively that he committed the subject-matter of preparing the plans to the architect, and is not excused by the approval of the building department. (*Rouse* v. *Whited*, 25 N. Y. 170; *Gratton* v. *M. L. Ins. Co.*, 92 N. Y. 284; *People* v. *Buddensieck*, 103 N. Y. 487; *Clark* v. *N. Y., L. E. & W. R. R. Co.*, 40 Hun, 605; 113 N. Y. 670; *Wohlfahrt* v. *Beckert*, 92 N. Y. 490; *Becker* v. *Koch*, 104 N. Y. 394; *Joy* v. *Diefendorf*, 130 N. Y. 6; *Pitcher* v. *Lennon*, 12 App. Div. 356.)

O'BRIEN, J. The judgment in this case imputes personal negligence to the defendant Ireland, resulting in the death of the plaintiff's intestate. The important question presented by the appeal is, whether this conclusion is justified by the undisputed facts. It is insisted among other things on behalf of the defendant, who has appealed from the judgment, that the recovery has been had upon different grounds than those alleged in the complaint; and, also, it is contended that there should be

a reversal upon exceptions taken to the refusal of the learned trial judge, at the request of the defendant's counsel, to charge certain propositions of law. In the view which we are inclined to take of the case it is not necessary to consider these points of the argument, since if there were any facts established for the consideration of the jury we would not be disposed to interfere with the judgment upon any nice questions of practice, or to subject the charge and the requests to a very close analysis, for in the main the proceedings at the trial, including the charge, were regular, and it may be, so far as these exceptions are concerned, correct. The real question is, whether there was any proof in the case which could justify the finding by the jury of personal negligence on the part of the defendant which was the proximate cause of the accident. If there was not, the other questions in the case are of no importance.

On the eighth day of August, 1895, the plaintiff's husband, the intestate, was killed while engaged at his occupation as a plasterer upon a building which was being erected by the defendant. The deceased, at the time of his death, was in the employ of a sub-contractor who had charge of that part of the work. It appears from the record that the defendant was the owner of a plot of land on the northeast corner of West Third street and West Broadway in the city of New York, and during the latter part of the year 1894 he resolved to erect a large commercial building thereon, eight stories in height. He employed a competent architect to draw the plans for the building with the necessary specifications, which were submitted to and approved by the building department of the city after an examination of the land upon which the building was to be erected, in connection with the plans. There is no suggestion in the record that this architect was incompetent to perform the duty for which he had been employed. The defendant then entered into a contract with a party to excavate the cellar for the building and into another contract with a competent builder to erect the building for a stated price. Both of these con-

tracts were in writing and appear in the record. In each of them it was provided that the work should be done according to the plans and specifications of the architect, which were made a part of the contract; and it was stated that "The specifications and drawings are intended to co-operate, so that any works exhibited in the drawings and not mentioned in the specifications, or *vice versa*, are to be executed the same as if it were mentioned in the specifications and set forth in the drawings to the true meaning and intention of the said drawings and specifications, without any extra charge whatsoever," and the same provision was inserted as a general condition in the specifications. The contract for the excavation required the contractor to do all digging and grading in time so as not to delay the other mechanics, agreeably to the drawings and specifications and to the satisfaction and under the direction of the architect, and to provide such good and proper materials as should be sufficient for completing and finishing the digging mentioned in the mason's specifications. The builder contracted to erect the building according to the plans, elevations, specifications and drawings made by the architect, which were made part of the contract. When the defendant made application to the building department for permission to erect the building, the drawings and plans accompanied the application and were filed with and approved by the building department after a careful examination by their inspectors and experts before the contracts referred to had been executed. The contract bound the builder to comply with all laws and corporation ordinances concerning the construction of buildings and the rules and regulations of the building department. It was provided that in case the owner should at any time during the progress of the work request any alteration, deviation, additions or omissions from the contract, he should be at liberty to do so, and the same in no way should affect or make void the contract, but should be added to or deducted from the amount of the contract as the case might be by a fair and reasonable valuation. Under this provision the owner, sometime after the erection of the building had been commenced, added an

additional story to the building.    The original plans and speci-
fications contemplated a building seven stories in height, but
with this modification a change was made for a building eight
stories high.

The provision of the contract which has a direct and imme-
diate bearing upon this case is that relating to the laying down
of concrete work.    It was provided that no concrete shall be
laid in trenches until the same has been examined by the
architect, as concrete must not be laid on a disturbed bottom.
It is plain that the contract, plans and specifications must be
read together, as they constitute the contract in its entirety,
and that when thus read it is clear that the builder was bound
to lay the concrete for the foundations on a solid or undis-
turbed bottom.    The cause of the accident which resulted in
the death of the plaintiff's intestate is not open to any doubt
upon the undisputed proof in the case.    The plans and speci-
fications required that through the center of the building,
from north to south, there should be a row of five iron
columns intended to support the beams and girders.    These
columns rested upon an iron base laid upon a cut stone block,
and the whole rested upon a concrete foundation nine or ten
feet square.    In digging the trench or space for the concrete,
foundation under the central column, the workmen came upon
an old circular cistern which had been previously covered up,
and it was unknown to any of the parties.    The builder's
foreman directed the men to take two rows of bricks off,
straighten the wall so as to make the trench over the wall as
low as that part outside of it.    He then cleaned out a part of
the cistern in which the concrete foundation would come,
according to the plans.    The foundation for this column was
then laid partly in the old cistern, partly upon the natural
earth outside of the cistern and partly upon the cistern wall.
That part outside of the cistern and that part upon the wall
was twelve inches thick, and that part within the cistern was
twenty-eight inches thick and rested upon the brick bottom of
the cistern, which was sixteen inches lower than the bottom
of the concrete outside of the cistern wall.    When the foun-

dation for the column was thus laid it was covered with sand, and it does not appear that it was ever inspected or seen by the architect. The builder continued the work of erecting the building until the eighth day of August, 1895, when the central column which rested on this old cistern wall collapsed, the foundation broke and the iron column sunk seven feet into the earth, causing that portion of the building supported by it to fall. Fifteen persons, including the plaintiff's intestate, were killed by the accident, and after the collapse the manner in which the foundation under the column had been constructed was ascertained from an examination. The defendant, so far as appears, knew nothing of the existence of the cistern until after the building had collapsed. The concrete foundation was, by the terms of the contract, to be eighteen inches thick but in fact it was only twelve, except that part laid in the old cistern. The largest portion of the concrete foundation, and upon which the strain of the column rested, was outside of the cistern wall and had been laid upon unsafe or disturbed earth. This is plain from the fact that the concrete broke just outside the cistern wall, and the column, by the weight upon it, was driven into the earth seven feet. The testimony in the case is of such a character that it may be said to be an undisputed fact that had the concrete foundation under the central column been constructed eighteen inches thick and laid upon undisturbed ground, in accordance with the plans and specifications, the building would not have fallen, and it is quite clear that the accident resulted from this defect in the work. The facts in this respect as stated were conceded by the learned trial judge in the charge to the jury, and it is entirely safe to say that there is not and never has been any claim that the defendant is responsible for the accident unless this defect can be imputed to him as a breach of some duty or obligation that he owed to the deceased or the public. The court also charged the jury that the plans and specifications were devised by a competent architect, and it is not claimed that the builder was incompetent. The controversy, therefore, is reduced to very narrow

limits, since it is a question as to how far the defendant can be held responsible for a defect in the work resulting from the omission of the builder to perform his contract.

The owner of real property in a city holds it subject to such reasonable police regulations with respect to its use as may be necessary for the health, safety or convenience of the public. Subject to these restrictions he has the right to use his land for building purposes, and unless he is guilty of some personal negligence in the use or enjoyment of the property which endangers the safety of others, he cannot be held responsible for the results of accidents. In this case the owner was not competent himself to plan the building which he desired to erect. He was not competent to construct or superintend the construction. If he had attempted to do any of these things it may be that he could be held responsible for the results of the accident. It was his duty to devolve these things upon persons possessing sufficient knowledge and skill to accomplish the result intended, with safety to the workmen and the public. Accordingly he employed a competent architect to draw the plans and specifications for the building, which were approved by that department of the city government which had charge of the matter. It cannot be said that he interfered with the plans, or reserved or exercised any right to change them. In other words, he committed the whole matter to a competent expert. The work of constructing the building, including the foundations, he also committed to a competent contractor, but whose foreman made the mistake of placing the central column, which supported the upper part of the building, upon an insecure foundation. This mistake was the direct or proximate cause of the accident, in which the plaintiff's intestate lost his life. It produced such distressing results that it is natural to seek relief for the families of the unfortunate victims from some source.

The learned counsel for the plaintiff has presented to us an argument in support of this judgment which illustrates the capacity of the human intellect to reason and argue in support of a cause which very properly enlists human sympathy.

We have considered this argument in all its bearings with all the care that the great importance of the case seems to require. As a professional effort, in which skill and learning combined with great reasoning powers have been displayed, it cannot be too highly commended. The difficulty is that it leads to a conclusion that cannot be accepted by the court without overthrowing established principles which are vital for the reasonable protection and security of every owner of real estate. If the principle contended for should receive the sanction of this court, it would be very difficult, if not impossible, for any owner of land in a great city to use it for building purposes without subjecting his entire estate to such enormous hazards as would virtually amount to a prohibition of such use. When the argument is considered in its entire scope and tendency, the plain conclusion is that the defendant could not devolve upon either architects or contractors the duty of preparing the foundations of the column which gave way, so as to escape responsibility for the results of the accident. It would not be possible, without extending the discussion beyond all reasonable limits, to answer the several propositions from which the learned counsel for the plaintiff has deduced his general conclusion.

It is quite sufficient to say that they all proceed from a principle of duty and responsibility on the part of the owner that is not warranted by the rules of law applicable to the case. If it be true that the owner was bound at his peril to see to it that the foundation of the iron column was laid upon solid ground, then it would be difficult to avoid the conclusion that the result of the accident could be attributed to the omission of the defendant in that respect. But we think that this was an obligation which the owner could devolve upon an independent contractor, and it requires only a fair construction of the contract to show that it was placed upon the builder, for whose omissions or mistakes the defendant is not responsible. There is no proof in the case from which the jury could find that the accident resulted from any defect in the plan. The death of the plaintiff's intestate was caused

by a defective execution of the plan which the contractor agreed to carry out. The central column, which was intended to support the building, was placed upon an unsafe foundation, and this was the direct or proximate cause of the calamity. If the architect, who had general supervision, had insisted upon a careful inspection of every detail of the work and had been present when the concrete was about to be laid upon the disturbed ground outside the old cistern wall, he might have discovered the departure from the terms of the contract in that respect and prevented it. But the architect was not the agent or servant of the owner. He was in the exercise of an independent calling and held the same legal relations to the defendant that the builder did, and for the omissions of either in the execution of the plans, personal negligence cannot be imputed to the defendant. (*Stryker* v. *Cassidy*, 76 N. Y. 50; *Lake* v. *McElfatrick*, 139 N. Y. 349; *Dodge* v. *McDonnell*, 14 Wis. 553; *Lottman* v. *Barnett*, 62 Mo. 159.) The responsibility of an owner of land engaged in improving it, or building upon it, through an independent contractor, for accidents such as the record discloses in this case, is well settled. While it may be that none of the cases in this court presented such serious and distressing consequences of an accident as the one now before us, the decisions establish certain principles which prelude a recovery against the owner on the undisputed facts of the case.

It will be seen from an examination of these cases that they determine principles which, when applied to the facts of this case, are fatal to the judgment. (*Pack* v. *Mayor, etc., of N. Y.*, 8 N. Y. 222; *Kelly* v. *Mayor, etc., of N. Y.*, 11 N. Y. 432; *McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181; *Charlock* v. *Freel*, 125 N. Y. 357; *Engel* v. *Eureka Club*, 137 N. Y. 100; *Negus* v. *Becker*, 143 N. Y. 303; *Vogel* v. *Mayor, etc., of N. Y.*, 92 N. Y. 10; *Herrington* v. *Vil. of Lansingburgh*, 110 N. Y. 145; *Berg* v. *Parsons*, 156 N. Y. 109; *Wolf* v. *Am. Tract Society*, 164 N. Y. 30; *Uppington* v. *City of New York*, 165 N. Y. 222.) The defendant under-

took to erect a building on his own land in a proper and the usual way. He omitted nothing that can be made the basis of a charge of personal negligence in going about the undertaking. He took all such measures to construct the building that any reasonably prudent man would under the same circumstances. No one could reasonably anticipate or guard against the unfortunate result, except the experts employed to plan and erect the building. After a careful examination of the case, we can see only a most sad and unfortunate accident, for the result of which the defendant, within acknowledged principles of law, cannot be held liable.

The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

Parker, Ch. J., Gray, Haight, Landon and Werner, JJ., concur; Cullen, J., not sitting.

Judgment reversed, etc.