## O'NEILL v. GRAY.

Circuit Court of Appeals, Second Circuit.
February 18, 1929.

No. 159.

Thomas J. O'Neill, of White Plains, N. Y. (Charles D. Lewis, of White Plains, N. Y., and Leonard F. Fish, of New York City, of counsel), for plaintiff in error.

Strongman & Ward, of New York City (Karl W. Kirchwey, of New York City, of counsel), for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ▮ The first objection raised by the defendant is the statute of limitations. An action for malpractice must be commenced within two years after the cause of action has accrued. New York Civil Practice Act, § 50. This term has been regarded by the courts as embracing unskillful or illegal practice by doctors or dentists, which results in physical injuries to the person. It is coupled in the statute with other purely personal wrongs— "libel, slander, assault, battery, seduction, criminal conversation, false imprisonment, and malicious prosecution." The injured person knows his injury, and may be properly required to decide promptly whether it is serious enough to justify suit. This is the construction which has been adopted by the state courts. Hurlburt v. Gillett, 96 Misc. Rep. 585, 161 N. Y. S. 994, affirmed 176 App. Div. 893, 162 N. Y. S. 1124; Camp v. Reeves, 209 App. Div. 488, 205 N. Y. S. 259, affirmed 240 N. Y. 672, 148 N. E. 753; American Exchange Pacific Bank v. Touche, 131 Misc. Rep. 236, 227 N. Y. S. 218. Under these cases, this statute only applies to wrongs to the person, and does not affect attorneys at law who have negligently conducted a litigation. Furthermore, if "malpractice" were construed to include injuries to property caused by unskillful professional management, many claims, as in this case, would be barred before they were discovered.

▮ It is also clear that the cause of action here is not "to recover damages for a personal injury resulting from negligence" embraced in the three-year statute of limitations provided in section 49 of the New York Civil Practice Act. Section 37-a of the General Construction Law of the state of New York (Consol. Laws, c. 22) defines "personal injury" as including: "Libel, slander, criminal conversation, seduction and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or

of another." It is clear from this definition that the present cause of action is not to recover for a personal injury.

The case of Riddle v. MacFadden, 201 N. Y. 215, 94 N. E. 644, where suit was brought, under chapter 132 of the Laws of 1903 of the state of New York, for an injunction and damages, because the picture of the plaintiff had been circulated for commercial purposes without her consent, is relied upon as supporting the contention that the injury here was a personal one, and comes within the three-year statute of limitations. But Riddle v. MacFadden, supra, has no relevancy, for an injury to the statutory right of privacy is plainly personal, while the damage here is to the property of the estate of which the plaintiff is administratrix, in that there has been a loss of a cause of action against H. H. Vought & Co. belonging to that estate.

█ General Construction Law, § 25-a, defines "injury to property" as injury "whereby the estate of another is lessened, other than a personal injury, or the breach of a contract." The present action is either for a breach of the contract of retainer, or for an injury to property. In either case, section 48 of the Civil Practice Act applies, and the period of limitation is six years.

█ Inasmuch, therefore, as six years had not elapsed between February 16, 1923, when the plaintiff's action against H. H. Vought & Co. was lost, and the time when this action was brought, there can be no bar of the statute of limitations, and we must consider whether the plaintiff offered proof which justified submission to the jury of a good cause of action against H. H. Vought & Co.

The iron stairs had been erected by the workmen in the employ of a subcontractor, who did the iron work, and not by the general contractor. At common law there would be no liability of an owner to employés of contractors for injuries received upon the premises, where he had turned over the premises to a contractor to construct a building, unless he was guilty of some affirmative act of negligence affecting the safety of such employés. Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755, 54 Am. Rep. 703; Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692; Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; Joyce v. Convent Avenue Construction Co., 155 App. Div. 586, 140 N. Y. S. 663.

But a person who has general super-vision of a building under construction may well, even at common law, stand in the position of one who can be said to *invite* workmen necessarily coming upon the premises, whether they be his own or those of a subcontractor. To such persons the general contractor owes "reasonable care to prevent damage from unusual danger which he knows or ought to know." Indermaur v. Dames, L. R. 2 C. P. 311; Litsch v. Todds, Irons & Robertson, Inc., 239 N. Y. 559, 147 N. E. 194; Pollock on Torts (12 Ed.) page 516. But, irrespective of this, there was section 18 of the New York Labor Law (Consol. Laws, c. 31), providing that:

"A person employing or directing another * * * in the erection, * * * of a * * * building * * * shall not furnish * * * scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

In Quigley v. Thatcher, 207 N. Y. 66, 100 N. E. 596, an employee of a subcontractor fell from an unsafe scaffold that had been installed by the general contractor, when he was using it as the only means to get to his work. The New York Court of Appeals held the general contractor liable for the injuries which this employee sustained by reason of the unsafe scaffold. Doubtless there was a common-law liability, if the general contractors installed such a dangerous scaffolding and foresaw that the subcontractor's men would have to use it. But the court in that case placed the liability upon the section of the Labor Law above referred to. Judge Hiscock, writing the opinion, said:

"We think that when a contractor constructs and so locates a scaffold or platform that his subcontractor must of necessity or under the requirements of reasonable convenience in the performance of his work use the same the contractor may be held to have anticipated such use and to have assumed liability to such subcontractor and his employees for the safety thereof."

He also said that "this statute is one for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed, and under such interpretation we think that a contractor may by course of events become liable to a subcontractor and his employees for the safety of a scaffold although originally and expressly he assumed no such responsibility."

It may be said that the scaffold in Quig-

ley v. Thatcher, supra, was built by the general contractor, while here the stairway had been erected by an independent subcontractor. But the general contractor furnished the stairway, when he contracted for it and it was installed pursuant to the contract. He also, like the general contractor in the Quigley Case, in effect *directed* the employees of the subcontractor to use it when he, having contracted for the construction of the building, ordered the stonework, allowed it to be put up, and knew that the only way the employees of the subcontractor could perform their work was to use the skeleton stairway.

In De Lee v. T. J. Pardy Construction Co., 249 N. Y. 103, 162 N. E. 599, a general contractor, who had supervision of the performance of a construction contract, was held liable to the employee of a subcontractor for the collapse of a scaffold built by the subcontractor, which fell on the workman, because the general contractor had not inspected it and had permitted it to be overloaded. See, also, Litsch v. Todds, Irons & Robertson, Inc., supra, where a general contractor was held liable to the employee of a subcontractor in failing to keep lighted the stairways of a building under construction.

Doremus v. Auerbach, 176 App. Div. 512, 163 N. Y. S. 239, affirmed in 223 N. Y. 709, 120 N. E. 861, is relied upon by the defendant. That action was against the owner of the premises, and is distinguishable because there was a safe way to proceed and the employee chose the uncompleted stairway. The Appellate Division said: "It was not necessary for deceased to use this stairway, although it was probably the most direct route to the point to which he was bound."

In the case at bar the general contractor, in his agreement with the owner, was under the duty of "efficient supervision" of the work, and was obliged to keep on it during its progress a "competent foreman." In such circumstances, the jury was justified in finding that the removal of the ladder from the ninth floor to the roof, two days before the accident, was known to the general contractor, and that any stoneworkers having to work on the roof must use the skeleton stairway. The jury might properly determine whether the "mechanical contrivances" —i. e., the skeleton stairway whereby the decedent descended from the roof—were safe and proper, and whether such stairway should have had a guard rail. These questions, as well as those of contributory negligence, were for the triers of the facts.

It was further objected that proof of a custom to use guardrails should not have been allowed. The existence of such a custom was denied, but where truth lay in such a conflict of evidence was for the jury. It was also objected that there was, in any event, no proof that such a custom was uniform. But it did not have to be uniform, as in the case of a custom proved to supplement a contract. The evidence was admitted only to indicate what was a customary standard of care, as bearing on the question of negligence.

Last, it was suggested during the argument that there was no proof of negligence in the management of the litigation by defendant's associate, because there was fair reason to believe that the plaintiff could amend the complaint, so as to recover against the partnership of H. H. Vought & Co., because of their appearance in the action. Perhaps the decision of the Special Term, permitting such an amendment nunc pro tunc, tended to bear out this contention. Gray v. H. H. Vought & Co., 126 Misc. Rep. 33, 212 N. Y. S. 511. But the point was doubtful, was in the end decided against the plaintiff, and could have been eliminated from the case by prompt action. The Appellate Division reversed the order allowing the amendment, both on the law and because of laches. Gray v. H. H. Vought & Co., 216 App. Div. 230, 214 N. Y. S. 765. The Court of Appeals dismissed the appeal by a divided court, because one ground of the decision below involved the exercise of discretion. Gray v. H. H. Vought & Co., 243 N. Y. 585, 154 N. E. 615. Skillful conduct involves avoidance of wholly unnecessary risks. We think it was properly left to the jury to say whether the conduct of the litigation was reasonably skillful. Indeed, we understand that the defendant does not seriously question this ruling.

The judgment is affirmed.