## Richmond

JOSEPH S. GOODSTEIN and SHELDON RUBEN,
individually and t/a G & R ASSOCIATES

v.

JAY M. WEINBERG, ALLAN S. BUFFENSTEIN,
HIRSCHLER & FLEISCHER, ATTORNEYS, a
Partnership, and HIRSCHLER, FLEISCHER,
WEINBERG, COX & ALLEN, ATTORNEYS, a
Partnership.

June 9, 1978

Record No. 770373

Present: All the Justices.

*John C. Lowe (Lowe and Gordon, Ltd.,* on brief) for plaintiffs in error.

*James C. Roberts (William S. Smithers, Jr.; Russell V. Palmore, Jr.; Mays, Valentine, Davenport and Moore; Thompson, Savage, Smithers and Marshall,* on brief) for defendants in error.

HARMAN, J., delivered the opinion of the Court.

By this appeal Joseph S. Goodstein and Sheldon Ruben, individually and trading as G & R Associates (plaintiffs or Associates), challenge the trial court's ruling sustaining a plea of the statute of limitations filed by Jay M. Weinberg, Allan S. Buffenstein, Hirschler & Fleischer, Attorneys, a partnership, and Hirschler, Fleischer, Weinberg, Cox & Allen, Attorneys, a partnership (defendants or H & F), in the plaintiffs' action seeking damages from H & F for alleged fraud, professional malpractice and negligence. The real issue is whether, upon the record before us, the trial court erred in applying the tort statute of limitations instead of the limitation applicable to contracts not in writing.

Many of the facts are not in dispute. On June 5, 1972, Associates agreed to purchase 53.88 acres of land zoned for industry in Henrico County for $6,500 per acre subject to satisfaction of certain terms and conditions prior to closing. The contract included the following provisions:

"4. *Conditions.* This contract of sale, at the sole option of Purchasers, is subject to the following terms and conditions:
\* \* \*

"(b) Public water and sewer in sufficient quantity and capacity to serve the property being available at one of the property lines without offsite improvements, pump and lift stations being required (except for sewer, which shall be within 800 feet of the property) and Purchasers receiving all requisite governmental approvals to utilize same.

"(c) Purchaser to have 60 days to have all necessary engineering studies made to determine if any fill dirt, underground rock or streams on the Property would increase the cost of construction of industrial uses on the Property as opposed to the cost of constructing same if such item or items were not present. If Sellers are not notified within 30 days from date of Contract in writing, then this item becomes null and void."

H & F were employed by Associates to examine title to the property and "to advise [Associates] of all aspects of the acquisition of the property." In late June or early July, Associates accompanied Weinberg, one of the defendants, to view the property. As a result of this view, Weinberg told Associates that there might be "potential problems with the property relating to fill dirt and [sand and gravel] mining" on the property and recommended that an engineer be employed to make a geological survey of the property in order to ascertain whether the property met the requirements of paragraph 4(c) of the agreement. Associates concurred in the recommendation and authorized H & F to have such a survey made.

Pursuant to this authorization, H & F employed Froehling & Robertson, Inc. (Froehling), an engineering firm, to make a survey. Froehling, after sending its personnel to the property on August 2 and 3, made a written report to H & F.

Allan Buffenstein, an attorney employed by H & F, made the title examination. He also contacted local governmental authorities in Henrico County to ascertain that the water and sewer requirements of paragraph 4(b) of the agreement had been met. Associates, assisted by Buffenstein of H & F, consummated purchase of the property on October 3, 1972.

Sometime in the late spring or early summer of 1974, Associates learned that sewer service was not available within 800 feet of the property without pump or lift stations. Subsequent investigation by Associates revealed that extensive sand and gravel mining operations on the rear portion of the property prior to its acquisition

made that portion of the property unsuitable for industrial use without a substantial expenditure of money.

On January 8, 1975, Associates, represented by H & F, instituted an action against Froehling seeking damages caused by its alleged negligence in performing engineering services for Associates. As a result of conferences between the parties, pleadings and pretrial proceedings, it became apparent that there was a serious conflict between Froehling's version, as opposed to that of H & F, about the nature, character and extent of the services which had been ordered from Froehling by H & F. It also developed that no written instructions had been given to Froehling by H & F. In fact, Froehling denied ever receiving, or being advised of, the contract terms and conditions.

Another critical conflict arose concerning a telephone conversation which was alleged to have taken place the day the purchase of the property was consummated. When Associates reviewed Froehling's written report and questioned whether it was adequate, Buffenstein of H & F allegedly made a telephone call to Vogelsong, one of the officers of Froehling, who allegedly advised Buffenstein that, based upon Froehling's investigation, Associates could "build a twenty story building on the property." Vogelsong denied that such a conversation ever occurred.

On June 16, 1975, H & F withdrew as counsel for Associates and its present counsel was substituted. On September 24 an amended motion for judgment was filed against Froehling and H & F. In the first count of this amended motion, Associates sought compensatory damages from both Froehling and H & F for alleged breach by negligence of their separate employment contracts. In a second count of the motion, Associates sought both compensatory and punitive damages against H & F for alleged fraud and professional negligence.

H & F demurred to the amended motion on several grounds, including misjoinder of tort and contract, misjoinder of causes of action, and misjoinder of parties. H & F also filed a plea of the statute of limitations.

By order of March 22, 1976, the trial court, finding a misjoinder of parties and misjoinder of causes of action, ordered a severance of the action against H & F from the action against Froehling and further ordered that each action should thereafter proceed as a separate action. That part of the court's ruling is not challenged

here. The court also held that there was a misjoinder of an action in contract with an action in tort, and required Associates to elect upon which action it would proceed, with the other action being dismissed without prejudice.

Associates made its election and filed yet another amended motion for judgment against H & F seeking both compensatory and punitive damages "based solely on tort liability". In response to this amended motion, H & F filed a plea of the statute of limitations.

Finding that Associates' action was "purely in tort" and "not merely sounding in tort", the trial court applied the tort limitation fixed by Code § 8-24 (since amended and recodified as Code § 8.01-243) and dismissed Associates' action.

Associates first argue that this case is controlled by *Oleyar* v. *Kerr, Trustee,* 217 Va. 88, 225 S.E.2d 398 (1976), where we held the proper limitation in an action for legal malpractice to be the three year limitation applying to contracts not in writing. We do not agree.

*Oleyar* was a client's action seeking to recover compensatory damages suffered because of the negligence of an attorney in examining a title. Misjoinder of actions in contract and tort was not an issue there. The question then before us for determination was the nature of the action, whether in contract or in tort, so that we could determine the appropriate statute of limitations. Finding that the action was grounded upon and had its inception in the contractual relationship between attorney and client, we applied the contract statute of limitations although the pleadings also sounded in tort.

Associates' action against H & F contained one count seeking to recover compensatory damages for negligent breach of contract. Another count sought to recover both compensatory and punitive damages based solely on tort liability, for the allegedly fraudulent and willfully negligent conduct of the attorneys.

The general rule is that exemplary or punitive damages are not allowed for breach of contract even though the action is *ex delicto* and not *ex contractu*. This rule does not obtain, however, in those exceptional cases where the breach amounts to an independent, willful tort since the plaintiff has a right to elect whether he will proceed in tort or upon the contract. *Wright* v. *Everett,* 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956).

By asserting separate counts in contract and in tort in the same action, Associates violated the common law rule, which had always been followed in Virginia, prohibiting such a joinder. Clearly, at the time this issue was decided below, the trial court was correct in holding there was a misjoinder and in requiring an election by the plaintiffs.

Since the plaintiffs elected, albeit by a required election, to proceed "solely on tort liability", they are bound by that election.

■ Assuming arguendo that *Oleyar* does not control, Associates say that we should, in the interest of uniformity, follow some of our sister states* and hold that the contract statute of limitations applies to all actions for legal malpractice, regardless of whether the action is brought *ex contractu* or *ex delicto*. To follow this suggestion would require us to ignore the general statutory scheme of limitations adopted by the General Assembly relating to the limitations on actions based on the nature of the action, *i.e.*, whether in contract or in tort. This we decline to do.

■ The final argument of Associates, one which was first raised at bar on oral argument, is that Code § 8.01-272, which now permits the joinder of actions in tort and contract where those claims arose out of the same transaction or occurrence, should be applied by us in this case. This statute became effective on October 1, 1977, more than ten months after final judgment in the trial court and almost three months after we granted the writ of error in this case. Since the application of the statute at this time might materially change the substantive rights of a party, as distinguished from the procedural aspects of the remedy, we hold that Code § 8.01-272 does not apply. Code § 8.01-1.

For all these reasons, the judgment of the trial court will be affirmed.

*Affirmed*

---

*See, e.g., Higa v. Mirikitani, 55 Haw. 167, 517 P.2d 1 (1973); Schirmer v. Nethercutt, 157 Wash. 172, 288 P. 265 (1930); and, by implication, Juhnke v. Hess, 211 Kan. 438, 506 P.2d 1142 (1973); O'Neill v. Gray, 30 F.2d 776 (2d Cir.), cert. denied. 279 U.S. 865 (1929).