## CIRCUIT COURT OF ARLINGTON COUNTY

James J. McFarland, Jr.

v.

James W. Korman

September 14, 1978

Case No. (Law) 19793

## By JUDGE CHARLES S. RUSSELL

In this "doctor strikes back" case a physician sues an attorney who had, on behalf of a client, brought a medical malpractice suit in the District of Columbia against the physician. The day before the trial the attorney non-suited as to this physician, continuing his case against others. The Motion for Judgment states that the malpractice suit was filed in the District of Columbia on December 8, 1975, and non-suited as to Dr. McFarland on August 27, 1976. The Motion for Judgment, in three counts, alleges in its first count that the attorney had a "continuing professional duty to do a thorough and accurate investigation of the claim his client sought to pursue, prior to filing suit and thereafter" and seeks damage for "great personal anguish . . . damage to his professional reputation and . . . expenses in the defense of said action" as a direct result of the Defendant's "negligent investigation". The second count alleges that the Defendant caused civil process to issue "without probable cause and with the intent to effect discovery", and claims the same elements of damage. The third count claims a libel of the good name and professional reputation of the Plaintiff, by reason of the filing of the malpractice pleadings among the

public records of the District of Columbia, and claims the same items of damage.

The Defendant demurs to all three counts and has filed a Special Plea of the Statute of Limitations. The Memorandum in support of the Demurrer asserts the Statute of Limitations only as to the first two counts, and evidently abandons it as to the claim of libel.

That this type of litigation has become a national vogue, is evidenced by a spate of Law Review articles generated within the past two years. See *Fordham L. Rev.*, Apr. 1977; *Case Western Reserve L. Rev.*, Spring 1976; *Univ. of Cincinnati L. Rev.*, 1976; *Trial Lawyers Quarterly*, Winter 1978; and *Texas Bar Journal*, May 1978. There is also a general article on the liability of an attorney for malicious prosecution at the hands of a party sued on behalf of a client at 27 A.L.R.3d 1113. However, it seems unnecessary to analyze these interesting questions since the first two counts appear to be barred by the one-year Statute of Limitations in Code Sec. 8.01-248. The revisors' note attached to this section specifically includes malicious prosecution and abuse of process among the torts which are covered by this "catch-all" provision.

It is clear that the substantive law to be applied in this case would be that of the District of Columbia, the jurisdiction in which the alleged torts were committed. It is equally clear to me that the Statute of Limitations applicable to suits of this kind bars the remedy rather than the right and is thus a matter of procedure rather than of substantive law. It is accordingly controlled by the law of the forum. 4A Michie's Juris., *Conflicts of Laws*, § 39. Code Section 8.01-249(3) specifies "in actions for malicious prosecution or abuse of process (the cause of action shall be deemed to accrue) when the relevant criminal or civil action is terminated." This Motion for judgment was filed on December 8, 1977. It recites that the malpractice case in the Superior Court of the District of Columbia was non-suited as to Dr. McFarland "on or before August 27, 1976." Thus, regardless of whether Counts 1 and 2 are classified as actions for malicious prosecution or abuse of process, they were barred by the one-year Statute of Limitations of 8.01-248.

It is true that Count 1 alleges a novel theory of "negligent investigation" which does not fit into the traditional tort categories mentioned above. The Appellate Division of the Supreme Court of New York, Third Department, recognized such a new cause of action in the case of *Drago v. Buonagurio,* 402 N.Y.S. 2d 250 (1978). The New York Court concluded that it was not constrained by traditional tort classifications from recognizing a novel cause of action, and quotes *Prosser on Torts* to the effect that "New and nameless torts are being recognized constantly to cope with society's economic, social and technological changes." (404 N.Y.S.2d 250, at 252). But even if such a cause of action should be recognized in Virginia (which I doubt; I find the reasoning of Judge Backus in *Zwibel, etc. v. Cohick, et al.,* Law 4192, Circuit Court of the City of Alexandria, December 19, 1977, to be most persuasive) such a cause of action would certainly be a "personal action, for which no limitation is otherwise prescribed" and thus barred by the one-year Statute of Limitations contained in Sec. 8.01-248. Under familiar principles it would have accrued even earlier than the traditional torts mentioned above, for it would have arisen when the alleged wrong was committed. This would have been, in my view, December 8, 1975, the date of the institution of the malpractice case in the District of Columbia, exactly two years before this suit was filed.

The parties, in their Memoranda, have discussed a theory of legal malpractice liability, whereby the attorney might be liable to someone other than his client. Virginia has held, in *Oleyar v. Kerr,* 217 Va. 88, at p. 90, that legal malpractice, while sounding in tort, is as between attorney and client, an action for breach of contract. The doctor against whom he instituted suit could hardly be said to have any privity of contract with the attorney. Nor could he be held to be a third party beneficiary to the contract of employment between the attorney and his client. Such a theory would require that the contract of employment be designed specifically to "benefit" the physician. One could hardly imagine this result to have been within the contemplation of the attorney and client. Accordingly, it is unnecessary to consider the contract Statute of Limitations.

In *Goodstein, et al. v. Weinberg, et al.*, 219 Va. 105 (decided June 9, 1978), the Supreme Court of Virginia held that where a breach of an attorney's contractual duty to his client is also tortious, and the client waives the contract and sues in tort, the tort Statute of Limitations will apply. There are also authorities from other jurisdictions, primarily California, cited by Plaintiff to the effect that an attorney may incur tort liability for a breach of duty to a third party, not his client, where the duty arose out of his contract of employment, that is, where the contract between attorney and client appeared to intend a benefit to a third party. These cases seem to me to do little but broaden third-party beneficiary notions derived from contract law in order to extend them to tort theories of recovery. But none of these authorities appear to stand for the proposition that a lawyer, by reason of his employment, assumes any duties toward the *adverse party*, his client's opponent. Such simultaneous exposure to the claims of his client on one hand, and his opponent on the other, would leave him in an untenable position. His fidelity to the interests of his client, subject to the Canons of Ethics, must be undivided. Thus even if "legal malpractice" may be read into the allegations of Counts I and II, no cause of action is stated.

It remains to be determined whether a cause of action has been alleged as to libel in Count 3. As seen above, the law of the District of Columbia applies. The libel complained of is the publication, by filing of the malpractice complaint in Clerk's Office of the Superior Court, of the allegations contained therein, to the damage of the physician's professional reputation. The District of Columbia has held that allegations made in judicial pleadings are absolutely privileged and may not be utilized as a basis for a libel suit. *Brown v. Shimabukuro*, 118 F.2d 17 (1940), and *Mohler v. Houston*, 365 A.2d 646 (1976).

The Special Plea of the Statute of Limitations will be sustained as to Counts 1 and 2 and the Demurrer will be sustained as to Count 3.