**Ronald E. HEWLETTE, Jr., Plaintiff,**

v.

**Robert H. HOVIS, III, and Robert H. Hovis, III, P.C., Defendants.**

No. 2:04CV128.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 19, 2004.

Jeremiah A. Denton, III, David D. Dickerson, David D. Dickerson & Associates, Virginia Beach, VA, Counsel for Plaintiff.

Renu Mago Setaro, Wright Robinson Osthimer & Tatum, Richmond, VA, Counsel for Defendants.

### OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on the motion of defendants Robert H. Hovis, III, and Robert H. Hovis, III, P.C. ("Hovis," collectively), to dismiss counts II through VI of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Hovis's motion for a more particular statement of fraud pursuant to Rule 9(b). For the reasons set forth below, the motion to dismiss counts II, III, and VI is **GRANTED**. The motion to dismiss counts IV and V is **DENIED**. Hovis's motion for a more particular statement of fraud is **DENIED**.

### I. Factual and Procedural History

On March 3, 2004, plaintiff Ronald E. Hewlette, Jr. ("Hewlette"), a Michigan citizen, filed a six-count complaint in the above-captioned matter against Hovis, a citizen of Virginia. The complaint sets forth six causes of action: breach of con-

tract, negligence/legal malpractice, breach of fiduciary duty, conversion, fraud, and "punitive damages for breach of contract accompanied by wilful independent tort," as counts one through six, respectively. It seeks $650,000 in compensatory damages and $350,000 in punitive damages. Hewlette alleges that in January, 1997, he and Hovis entered into a written contingency fee arrangement under which Hovis was to prosecute medical malpractice claims on behalf of Hewlette in return for 40% of any resulting award or settlement, plus expenses. The medical malpractice claims arose out of the alleged failure of three doctors, Hae Koh, M.D. ("Koh"), Dirk S. Proffer, M.D. ("Proffer"), and Peter S. Jacobson, M.D. ("Jacobson"), to diagnose Hewlette's cancer. The failure to diagnose the cancer allegedly led to the amputation of Hewlette's right leg. Hewlette also alleges that the hospital in which Koh treated him was liable for tort damages arising from Koh's treatment.

In 1997 and 1998, Hovis filed suit against the three doctors and the hospital on behalf of Hewlette. According to Hewlette's federal complaint, however, at the time that the suits against Proffer and the hospital were filed, the applicable statute of limitations on the claims against them had already expired. On February 25, 2000, the malpractice claim against Koh was settled for $300,000 ("the $300,000 settlement"), and that sum was allegedly paid to Hovis. At that time, Hewlette alleges, he demanded that Hovis pay him the proceeds of the $300,000 settlement, less Hovis's 40% fee and expenses as provided by the contingency fee contract. Rather than pay Hewlette his share of the settlement, however, Hovis allegedly told him that standard practice in the legal services industry required that Hovis retain Hewlette's share until all residual litigation involving the amputation of Hewlette's leg was complete. Allegedly in reliance on

this representation, Hewlette acquiesced in Hovis's retention of the funds.

At some later time, Hewlette and Hovis amended the contingency fee contract by written addendum to increase Hovis's contingency fee from 40% to 50%. Hewlette alleges that Hovis failed to explain to Hewlette that he was not required to authorize this fee increase. In 2002, Jacobson allegedly offered Hewlette $350,000 to settle. Hovis advised Hewlette not to accept the settlement offer, but rather to proceed with binding arbitration, which Hewlette did. The arbitrator awarded Hewlette only $150,000 ("the $150,000 award"), which sum was allegedly conveyed to Hovis. Hewlette allegedly demanded payment of his share of the arbitration award, but again, Hovis refused to pay Hewlette his share, saying that standard practice dictated that Hovis retain all funds until all residual litigation was concluded. Again, based on this representation, Hewlette acquiesced. In the months that followed, Hovis allegedly spent the entirety of the $300,000 settlement and the $150,000 arbitration award on "fruitless claims against various secondary and tertiary defendants." (Compl. ¶ 13.) Hewlette further alleges that some of these funds were used to pay for the expenses of other Hovis clients.

Hovis was served with summons and a copy of the federal complaint on March 17, 2004. On April 5, 2004, Hovis filed a motion to dismiss counts II through VI of the complaint pursuant to Rule 12(b)(6), a motion for a more particular allegation of fraud pursuant to Rule 9(b), and a memorandum and documents in support of those motions. Also on April 5, 2004, Hovis filed an answer as to Count I. On April 16, 2004, Hewlette filed a brief and documents in opposition to Hovis's motions. The time to file a reply brief has passed. No hearing

is necessary at this time, and Hovis's motions are ripe for review.

## II. Analysis

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move the court to dismiss any claim upon which, as a matter of law based on the allegations in the complaint, relief cannot be granted. A claim should not be dismissed pursuant to Rule 12(b)(6) unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

In Count I, Hewlette alleges that Hovis is liable for damages for breach of the contingency fee agreement between Hewlette and Hovis. Specifically, Hewlette alleges that Hovis breached the agreement by (1) negligently failing to file suit against certain defendants within the applicable statute of limitations, (2) negligently advising Hewlette to reject the $350,000 settlement offer made by Dr. Jacobson, and (3) appropriating for his own purposes the entirety of the proceeds from the $300,000 settlement and $150,000 arbitration award. Hovis does not ask the court to dismiss Count I for failure to state a claim. Rather, Hovis asserts that the remaining claims, counts II through VI, must be dismissed because a breach of contract claim is the *only* claim a client may file against his attorney under Virginia law.

 In Virginia, under both statutory and common law, an attorney is liable to the client for damages caused by the attorney's neglect of his duties as an attorney. Va.Code Ann. § 54.1–3906 (2002); *Ripper v. Bain*, 253 Va. 197, 202, 482 S.E.2d 832 (1997) (*citing Ortiz v. Barrett*, 222 Va. 118, 126, 278 S.E.2d 833 (1981)). However, actions for breach of an attorney's duties to the client normally arise under contract law, not tort law. *See, e.g., Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398 (1976) ("[A]n action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract and thus governed by the statute of limitations applicable to contracts."). "Implicit in a professional's contract of employment is the professional's duty to exercise the care of those ordinarily skilled in the business, and to exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which he is employed." *O'Connell v. Bean*, 263 Va. 176, 180–81, 556 S.E.2d 741 (2002). Nonetheless, even though the action is for breach of contract, tort principles, including the negligence standard of care and the defense of contributory negligence, are applicable to a contract action for legal malpractice. *Id.* at 181, 556 S.E.2d 741; *Lyle, Siegal, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 249 Va. 426, 432, 457 S.E.2d 28 (1995).[1]

---

1. Because claims against an attorney for breach of his duties as an attorney arise under contract law, punitive damages are not available in the absence of an "independent, wilful tort." *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514 (1983). Thus, "a plaintiff seeking punitive damages should allege a wilful, independent tort in a count separate from that which alleges a breach of contract." *Id.* An independent tort is "one that is factually bound to the contractual breach but whose legal elements are distinct from it." *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 672 (4th Cir.1986).

The foregoing does not mean that a client is limited to an action for breach of contract whenever an attorney engages in tortious conduct that injures him or her.[2] Where a person who happens to be an attorney engages in conduct that breaches a duty which exists outside of the attorney-client relationship, the client may bring tort claims seeking recompense for the damages caused by that conduct. *See, e.g., Goodstein v. Weinberg,* 219 Va. 105, 109, 245 S.E.2d 140 (1978) (holding that a client can sue attorney in tort for fraud). In other words, an individual does not relinquish his or her right to seek remuneration for tortious breach of common law duties simply because he or she retained the tortfeasor as counsel. Where the attorney breaches a duty that is independent of his or her status as attorney, then the attorney is liable in tort for those actions just as any other individual would be. *See Foreign Mission Bd. v. Wade,* 242 Va. 234, 241, 409 S.E.2d 144 (1991) (stating that for a client to have an independent, tort-based claim against his or her attorney, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract"). *Id.* "[W]hat is relevant is that there are two separate duties that are breached by the same or separate conduct—a duty arising out of the contract and a duty arising out of the common law."

*Vanguard Military Equip. v. David B. Finestone Co.,* 6 F.Supp.2d 488, 493 (E.D.Va.1997).[3]

### 1. Count II: Legal Malpractice and Negligence

Count II alleges that Hovis "had a duty to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which [he was] employed," and that he failed in that duty by failing to file suit against two medical defendants within the statute of limitations, by filing losing claims against secondary and tertiary defendants, and by advising Hewlette not to take the $350,000 settlement he was offered. The duty to perform these services, and therefore the duty to perform them in a reasonable manner, arose only by virtue of the contingency fee contract. Thus, under Virginia law, Hewlette's cause of action against Hovis for breach of those duties arises solely in contract law, not tort law. *See Oleyar,* 217 Va. at 90, 225 S.E.2d 398. Accordingly, Count II is **DISMISSED**.

### 2. Count III: Breach of Fiduciary Duty to Explain

In Count III, Hewlette alleges that Hovis is liable for damages for "breach of [a] fiduciary duty to explain" that Hewlette was entitled to receive a portion of the

---

**2.** *See supra* note 1.

**3.** In the motion to dismiss, Hovis also claims that the fiduciary duty claims, "as well as the other Counts of the Complaint," are barred by the statute of limitations. In Virginia, the statute of limitations for breach of a written contract is five years from the date the cause of action accrues. Va.Code Ann. § 8.01–246. When a plaintiff alleges legal malpractice, "the breach of contract or duty occurs and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated, notwithstanding the

continuation of a general attorney-client relationship." *MacLellan v. Throckmorton,* 235 Va. 341, 345, 367 S.E.2d 720 (1988) (*quoting Keller v. Denny,* 232 Va. 512, 518, 352 S.E.2d 327 (1987)). Hovis's representation of Hewlette in the medical malpractice matter does not appear to have ended more than five years before the complaint was filed. As for the independent torts alleged, the statute of limitations issue can more appropriately be raised by summary judgment motion because specific dates are not available to the court at this time and it is not clear from the face of the complaint that any of Hewlette's claims are expired.

$300,000 settlement, entitled to receive a portion of the $150,000 arbitration award, and not obligated to accept the increase of the contingency fee from 40% to 50%. These claims must be dismissed because an attorney's fiduciary duties to his client, including any fiduciary duty to explain, arise out of the employment contract. *See O'Connell v. Bean,* 263 Va. 176, 181, 556 S.E.2d 741 (2002) ("[W]e conclude that [plaintiff's] assertions of breaches of fiduciary duty and constructive fraud, while sounding in tort, are actions for breaches of the implied terms of [the attorney-client] contract."). Because Hovis would have owed no fiduciary duty to Hewlette in the absence of an attorney-client relationship, Count III is **DISMISSED.**

### 3. Count IV: Fraud

In Count IV, Hewlette alleges that Hovis committed fraud against him. Fraud is "the knowing misrepresentation of a material fact to a person whose reasonable reliance [on that misrepresented fact] results in damage." *Vanguard,* 6 F.Supp.2d at 493. The duty not to defraud is owed by everyone to everyone, regardless of any special relationship between the alleged tortfeasor and victim. Thus, fraud is an independent, wilful tort under Virginia law. *Goodstein,* 219 Va. at 109, 245 S.E.2d 140; *Vanguard,* 6 F.Supp.2d at 493. In this case, Hovis's duty not to defraud Hewlette for his own financial gain was owed to Hewlette irrespective of their attorney-client relationship. *See id.* Therefore, it is independent of Hewlette's claims for breach of contract, and the motion to dismiss Count IV is **DENIED.**[4]

### 4. Count V: Conversion

In Count V, Hewlette claims that Hovis is liable to him for tortious conversion. Hewlette alleges that he was entitled to a share of the $300,000 settlement and $150,000 award immediately upon their receipt by Hovis, that Hewlette demanded payment from Hovis, and that Hovis wrongfully refused to convey Hewlette's property to him. In Virginia, "the tort of conversion encompasses any wrongful exercise or assumption of authority ... over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *PGI, Inc. v. Rathe Prods., Inc.,* 265 Va. 334, 344, 576 S.E.2d 438 (2003) (internal quotations omitted). Like the duty not to defraud, the duty not to convert the property of another for one's own purposes is owed by everyone to everyone, and conversion therefore constitutes a wilful, independent tort from the contract claims arising out of Hovis's and Hewlette's attorney-client relationship. *See id.* ("A cause of action for conversion lies independent of an action in contract and may provide a separate basis" for damages.). Hovis' motion to dismiss Count V is **DENIED.**[5]

### 5. Count VI: Punitive Damages for Breach of Contract Accompanied by Wilful, Independent Tort

In Count VI, Hewlette apparently misinterprets language in Virginia cases such as *Kamlar* and *Goodstein* as creating an independent cause of action for "breach of contract accompanied by wilful independent tort." However, the statements in these cases such as "a plaintiff seeking punitive damages should allege a wilful, independent tort in a count separate from that which alleges a breach of contract," *Kamlar,* 224 Va. at 707, 299 S.E.2d 514, do not create a new cause of action. Instead, they stand for the proposition

---

**4.** This claim may be barred, however, by the statute of limitations. *See supra* note 3.

**5.** The statute of limitations may have run on this claim. *See supra* note 3.

that a plaintiff cannot claim punitive damages in a breach of contract suit unless that plaintiff also has a valid claim for tort damages for a wilful, independent tort.[6]

Hewlette has claimed damages, both compensatory and punitive, for two independent torts, fraud and conversion, in counts IV and V. The claim for punitive damages in these counts is sufficient under the Federal Rules to put Hovis on notice that punitive damages are being sought based upon the conduct alleged in these counts. *See* Fed.R.Civ.P. 8(a). Hewlette has no separate claim for breach of contract accompanied by a wilful, independent tort, because no such cause of action exists under Virginia law. Count VI fails to state an independent claim upon which relief can be granted, and is therefore **DISMISSED**.

## B. *Motion for a More Particular Allegation of Fraud*

Hovis also asks the court to require Hewlette to plead his fraud claim with more particularity, pursuant to Federal Rule of Civil Procedure 9(b). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b) (West 2004). Most federal courts have construed Rule 9(b) as requiring the plaintiff to specifically allege all of the elements of a fraud claim. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 583 (2d ed.1990). In Virginia, "[a] cause of action for actual fraud requires the plaintiff to prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."

*Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367, 585 S.E.2d 578 (2003).

█ Hewlette's complaint specifically alleges all of the elements of fraud. In count IV, Hewlette alleges that Hovis told him that the "standard practice" among plaintiff's lawyers and their clients is for the lawyer to retain all money received as settlements or awards until the conclusion of all related litigation in the matter. Hewlette alleges that, as a matter of fact, this is not the standard practice in the legal community, and that Hovis knew that he was not telling the truth. Further, Hewlette alleges that he relied on these statements, that his reliance was reasonable based upon the parties' attorney-client relationship, and that Hewlette suffered injury as a result of his reasonable reliance on Hovis's knowing misrepresentation. Hovis's Rule 9(b) motion is **DENIED**.

### III. Conclusion

For the reasons stated, defendants' motion to dismiss is **GRANTED** as to counts II, III, and VI. As to counts IV and V, defendants' motion to dismiss is **DENIED**. Defendants are **ORDERED** to file a responsive pleading to counts IV and V within ten (10) days of this Opinion and Order. Defendants' motion for a more particularized allegation of fraud is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**

█

---

**6.** *See supra* note 1.